### In re MISSOURI RIVER SAND & GRAVEL, INC., Debtor.

### William P. WESTPHAL, Trustee of the Estate of Missouri River Sand and Gravel, Inc., Plaintiff,

v.

### NORWEST BANK, Bismarck, North Dakota, f/k/a Dakota Northwestern Bank, NA, Defendant.

### Bankruptcy No. 81–05434. Adv. No. 87–7020.

United States Bankruptcy Court, D. North Dakota.

May 27, 1988.

Phillip D. Armstrong, Minot, N.D., for trustee.

Lawrence R. Klemin, Bismarck, N.D., for defendant.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court on competing motions for summary judgment. Norwest Bank (Bank) filed its Motion for Summary Judgment of Dismissal on March 22, 1988, and the trustee, William P. Westphal (Trustee), filed a Cross–Motion for Summary Judgment on March 30, 1988. Westphal, a successor Chapter 7 trustee, commenced the instant adversary action on March 6, 1987. He seeks recovery of a $27,500.00 cash distribution made by his predecessor Chapter 7 trustee to the Bank as well as recovery of post-petition payments on accounts receivables collected and retained by the Bank in the estimated sum of $28,287.00. Recovery of the $27,500.00 is based upon sections 544, 552, 549, as well as sections 547 and 502(j) of the Bankruptcy Code. Turnover of the collected accounts receivable proceeds is premised upon sections 547 and 542.

The Bank concedes it received post-petition the amounts in contention but alleges it had a blanket security interest in all of the Debtor's assets including accounts receivables and that it received the payments consistent with abandonment by the predecessor trustee. Moreover, the Bank, pointing to the date of the predecessor trustee's appointment, alleges that the instant adversary proceeding is jurisdictionally infirm for the reason that it was not commenced within the statutes of limitations prescribed by section 546(a) and section 549. The running of the statutes of limitations forms the basis for the Bank's motion.

Summary judgment is appropriate when the pleadings or other documents on file show there to exist no genuine issue as to any material fact and where the moving party is entitled to summary judgment as a matter of law. The burden is on the movant to establish the lack of any issue of material fact. *U.S. v. Porter,* 581 F.2d 698 (8th Cir.1978). Circuit decisions advise that when considering motions for summary judgment, the facts must be viewed in a light most favorable to the party opposing the motion, and courts must afford that

party the benefit of all inferences which may be derived from the facts contained in the pleadings, depositions and affidavits. *St. Louis County Bank v. United States,* 674 F.2d 1207 (8th Cir.1982); *Vette Co. v. Aetna Casualty & Surety,* 612 F.2d 1076 (8th Cir.1980); *McLain v. Meier,* 612 F.2d 349 (8th Cir.1979). The facts as they presently appear and as discussed below are gleaned from the main file as well as exhibits attached to the Bank's answer, the affidavit and supplemental affidavit of Lawrence D. Stockert, together with supporting exhibits, the affidavit of Gregory D. Biedermann, together with the supporting exhibits and the Bank's responses to interrogatories propounded by the trustee.

### Facts and Procedural Background

#### 1.

The Debtor filed for relief under Chapter 11 on September 29, 1981. The case was voluntarily converted to a case under Chapter 7 on November 24, 1981. Tom A. Brigham was appointed Chapter 7 trustee in December 1981 and resigned effective February 3, 1986. The Chapter 7 case file reveals that on February 4, 1986, the United States Trustee served notice that he personally would serve as trustee in the case pursuant to 11 U.S.C. § 15703(b)[1] pending appointment of a successor trustee. On February 4, 1986, Westphal assumed the role of successor trustee and on June 2, 1986, requested and obtained the appointment of an attorney to pursue recovery of erroneous payments made by his predecessor trustee, Mr. Brigham. The instant adversary proceeding was commenced on March 6, 1987, some five years and three months after Brigham's appointment as Chapter 7 trustee, but only one year after Westphal assumed control as successor trustee.

#### 2.

The unincorporated business known as Missouri River Sand and Gravel was pur-

chased from William Faiman by James E. Borchert in 1976. Concurrent with its purchase by Borchert, (the precise date is not known), Missouri River Sand and Gravel was incorporated with Borchert becoming its president. The minutes of the first meeting of the board of directors reflects that Borchert agreed to lease to the newly formed corporation all equipment purchased from Faiman d/b/a Missouri River Sand and Gravel for a sum of $2,100.00 per month commencing August 1, 1976. A detailed list of the equipment involved is attached to the minutes. The purchase by Borchert was financed by a $47,000.00 loan from the Bank to the Debtor who, as security therefor, extended the Bank a security interest in all the Debtor's assets, including equipment and inventory, "whether now owed or hereafter acquired," as well as accounts contract rights and other rights to payment "whether such right to payment now exists or hereafter arises." The security interest was perfected by a U.C.C.–1 Financing Statement on August 9, 1976, and a Continuation Statement was filed on July 31, 1981. Subsequently, the Bank extended the Debtor a series of five loans evidenced by five promissory notes totalling in the aggregate $137,500.00. None of these notes nor the security agreement suggests that the security is in equipment leased to the Debtor by Borchert.

In addition to the Debtor's corporate debt, Borchert personally borrowed $45,-260.00 from the Bank in 1977, extending the Bank a security interest in all inventory and equipment used in the Debtor's operation as well as accounts, contract rights and other rights to payment. This security agreement also contains after-acquired property clauses. This security interest was properly perfected.

As of the date of the Debtor's Chapter 11 filing the total outstanding indebtedness owing the Bank in consequence of the captioned loans totaled $136,210.52. Borc-

---

1. 11 U.S.C. § 15703(b).

   "If creditors do not elect a successor trustee under section 703(a) of this title, or if a trustee is needed in a case reopened under section 350 of this title, then the United States Trustee shall serve, or shall appoint one disinterested person that is a member of the panel of private trustees established under section 586(a)(1) of Title 28 to serve, as trustee in the case."

hert's personal indebtedness at the time totaled $36,276.00.

Borchert was in default on his purchase contract payments to Faiman and following the Debtor's conversion to Chapter 7 in November 1981, he relinquished to Faiman all right, title and interest in the equipment being purchased.

On March 11, 1982, Faiman and another individual doing business as Gravel Supply, Inc. "assumed" $62,152.71 of the Debtor's outstanding indebtedness with the Bank. Gravel Supply also assumed $32,847.00 of Borchert's personal obligation to the Bank. As a part of this arrangement the Bank advanced Gravel Supply a $60,000.00 operating loan. Gravel Supply extended two notes in favor of the Bank, one in the sum of $42,000.00 and the other in the sum of $120,000.00. Both notes bear on the face reference to being secured by a March 11, 1981, security agreement pertaining to all inventory, equipment, accounts, contract rights, etc., as well as personal guarantees. No security agreement bearing this date is among the affidavit exhibits. The Trustee asserts that this transaction was actually a post-petition sale of the Debtor's assets. According to the Bank's version, Gravel Supply received the Debtor's inventory rights and the equipment Borchert had been leasing to the Debtor. The Trustee, pointing to the August 1976 security agreement between the Debtor and the Bank as well as the Bank's comment sheet (Exhibit 13) says the equipment was actually the Debtor's. A bank comment logged on March 15, 1982, says, "Bill Faiman and Tony Schirado will be taking over the inventory and equipment owned by Missouri River Sand and Gravel, Inc. and held by us as collateral and operate the company as a new entity". The schedules of assets filed with the Debtor's petition list $258,000.00 of equipment and also lists the Bank as a secured creditor by virtue of the series of five notes. On Schedule A–2 the Bank is depicted as holding a security interest in all equipment. The list of equipment leased by Borchert to the Debtor as attached to the 1975 corporate minutes does not coincide with the Schedule A–2 list of equipment. Indeed the statement of executory contracts reveals three leases from Borchert to the Debtor including a detailed reference to the 1976 equipment lease. The statement values the equipment involved in the 1976 lease at $96,800.00. These documents suggest there to be two lines of equipment—one owned by Borchert and leased to the Debtor and the other owned by the Debtor outright.

The exhibits presented reveal that on February 1, 1982, the Bank sent predecessor trustee Brigham a copy of the security agreement asking him to notify it of any changes in the Debtor's status. The Bank's comment sheets reflect that it received an oral abandonment by the trustee. However, no report of abandonment was actually filed with the court although Brigham apparently did submit a report of abandonment of machinery, fixtures, and equipment to the U.S. Trustee on February 26, 1982. It appears that no notice of the intended abandonment was served on anyone.

On January 8, 1982, Brigham turned over to the Bank $27,500.00 in cash, which according to the Bank was applied to several of the Debtor's notes. Curiously, in reply to an October 1985 information request from the U.S. Trustee's office, the Bank reported it could find no record of the $27,500.00 having been applied to the Debtor's account. In a later letter to the Trustee the Bank advised that $20,000.00 had been applied to one of the Debtor's notes and $7,500.00 had been applied on Borchert's personal note. In fact, the Bank's officers were mistaken. The Bank's microfilm records and the notes themselves establish that all $27,500.00 was applied to the Debtor's notes.

In addition to receiving the $27,500.00 from the Trustee, the Bank also began to collect the Debtor's accounts receivables either from the Trustee or directly from the account debtors. Between January 12, 1982, and September 30, 1982, the Bank collected $28,287.98 from various account debtors. These sums were first deposited in the Debtor's collateral account but beginning in February 1982 the Bank periodically withdrew sums from the collateral

account and applied them against the Debtor's notes balances. By April 4, 1984, the full $28,287.98 had been applied to various of the Debtor's notes. No court order was ever sought or received for this authority. In consequence of the gravel and supply assumption, the $27,500.00 cash payment, and the accounts receivable applications, the balance remaining on the Debtor's obligation to the Bank stands at $17,422.36.

### Discussion

The Trustee's multi-faceted complaint begins with a challenge of the Bank's claimed security interest in the Debtor's accounts receivables. The Trustee takes the position that the $27,500.00 cash transfer as well as the $28,287.00 in collected accounts stems from after-acquired property to which the Bank's pre-petition security interest did not attach. As post-petition transfers neither authorized by the Code or the court, the Trustee seeks recovery of the money pursuant to section 549. He also charges that the $27,500.00 payment and the collected accounts constitute voidable preferences under section 547 and are otherwise voidable under section 544.

### 1.

The ability of the Trustee to maintain the action at all depends, in the first instance, upon whether his predecessor trustee effectively abandoned the estate's rights in the accounts. His ability to challenge either the Bank's security interest premised upon section 544 or a perceived preference premised upon section 547 depends upon whether the adversary action is time-barred by operation of section 546(a). Even if a section 544 lien avoidance and section 547 preference action are time-barred, the Trustee may nonetheless pursue recovery of any unauthorized post-petition transfer of estate property, providing the transfer sought to be avoided meets the limitation provisions of section 549(d).

The present Trustee's predecessor, Mr. Brigham, purportedly abandoned all the estate's interest in machinery, fixtures and inventory as evidenced by the report of abandonment dated February 26, 1982. The Bank concedes Brigham did not comply with the statutory formalities required for abandonment but nonetheless argues that his successor is prevented by virtue of the section 546 and 549 statute of limitations from attempting to bring the accounts receivables back into the estate.

Brigham's effort to abandon as regards the property pledged to the Bank is infirm for several reasons. First of all, the report of abandonment makes no reference at all to accounts receivables. Insofar as an expressed intention to abandon accounts receivables is concerned, the only evidence is the affidavit of a bank employee who, relying upon comments of a former bank employee expressed in a 1982 bank comment sheet, says the trustee orally abandoned the Debtor's assets. The burden of proof on whether an abandonment occurred is on the party asserting it. *Riverside Memorial Mausoleum, Inc. v. Umet Trust,* 469 F.Supp. 643 (D.C.E.D.Pa.1979). Mr. Stockert's affidavit recollection is hearsay on hearsay and does not satisfy the Bank's burden of proof. Secondly, and most important is that the "abandonment" was apparently made without any notice to creditors. Section 554(a) in effect in 1981 and 1982 provided (as it still does) that a trustee may abandon burdensome property after notice and hearing. While court approval is not necessary for effective abandonment, notice of the intended abandonment must nonetheless be given in order that parties be given a chance to object and afforded an opportunity for hearing in the event of an objection. Section 102(1)(B) defines "after notice and a hearing" as allowing abandonment without a hearing provided notice is given and no party requests a hearing. *Matter of Trim–X, Inc.,* 695 F.2d 296 (7th Cir.1982). Abandonment once made is generally regarded as irrevocable providing it is made knowingly and properly. *In re Wornell,* 70 B.R. 153 (D.C. W.D.Mo.1986); *In re Bryson,* 53 B.R. 3 (Bankr.M.D.Tenn.1985); *In re Burch Co., Inc.,* 37 B.R. 273 (Bankr.S.C.1983). The failure on the part of an abandoning trustee to properly abandon in a manner consistent with section 554(a) renders the abandonment ineffective. In the instant case

the effort of Mr. Brigham to abandon the Debtor's property was seriously deficient and did not result in abandonment. There being no abandonment, the property subject to the Bank's security interest including machinery, equipment, inventory accounts, contract rights and all other rights to payment remained and remains today property of the estate. Consistent with section 542(a) the Bank, as an entity in possession of property, is obliged to deliver it to the Trustee and account for the same, *"unless such property is of inconsequential value or benefit to the estate"*. (emphasis added).

2.

Because the Debtor's assets never lost their character as estate assets, the issue becomes not whether the property is property of the estate—it is; but whether the property has any value or benefit to the estate and thus amenable to being turned over. This question, in turn, depends upon whether the Trustee can successfully avoid the Bank's security interest despite the passage of time.

Going into the Debtor's Chapter 11 filing, the Bank had a perfected security interest in all the Debtor's inventory, equipment, accounts, contract rights and all other rights to payment. It also had a perfected security interest in all inventory, equipment, accounts, contract rights and other rights to payment belonging to Borchert personally. Given the language of the security agreements themselves as well as recalling the broad language of N.D.Cent. Code § 41–09–06 (U.C.C. § 9–106), defining an account as any right to payment for goods sold or leased which is not evidenced by an instrument or chattel paper whether or not it has been earned by performance, the court has no trouble concluding that the Bank does have a subsisting security interest in the Debtor's pre-petition accounts receivables as well as any after acquired accounts receivables to the extent valid under bankruptcy law.

Although the Trustee in his brief goes beyond his complaint-framed claims for relief and challenges the Bank's security interest in inventory to the extent it may

extend to minerals in place, such a challenge would be maintainable by the trustee only under section 544. The Trustee also challenges the Bank's security interest in the accounts receivables upon their possible status as commingled funds once they came into the hands of his predecessor. The continued validity of a security interest in non-identifiable cash proceeds commingled with other funds rests upon state law. N.D.Cent.Code § 41–09–27(4) (U.C.C. § 9–306)(4)). The Trustee's ability to avoid a security interest on the basis of the foregoing U.C.C. section is also rooted in the strong-arm provisions of section 544.

■ Section 544 avoidance actions are among those subject to the section 546(a) statute of limitations. Section 546(a) provides:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or

(2) the time the case is closed or dismissed.

The foregoing limitation applies to pre-petition transfers, the recovery of which hinges upon the date of the trustee's appointment. The Trustee, citing *In re AFCO Development Corp.*, 65 B.R. 781 (Bankr. Utah 1986), argues that the two year statute of limitations renews with the appointment of each trustee. That each trustee in a case under the same chapter gets a two year shot at asset recovery. The facts of *AFCO* are inapposite to the facts of this case. *AFCO* was concerned with case conversions from one bankruptcy chapter to another. The court there noted that the purposes and objectives and trustee's duties vary depending upon what chapter has been invoked and for that reason it held a trustee originally appointed in a Chapter 11 case and remaining as trustee after conversion to a Chapter 7 has two years after his Chapter 7 reappointment to commence those recovery actions time limited by section 546(a). This court has no quarrel with *AFCO* but does not believe the decision logically leads to a conclusion

that a successor trustee appointed in the same chapter as his predecessor gets a renewed two-year period. There is nothing in section 546(a) that suggests such a result. A successor Chapter 7 trustee is just that—a successor. He succeeds to the case and everything that has transpired in it up to the date of his appointment. If a predecessor Chapter 7 trustee has validly abandoned property, the successor trustee cannot undo it. If his predecessor has consumed the two-year limitation period of section 546(a) the successor trustee cannot do what his predecessor failed to do. Otherwise, the statute of limitations would be a nullity with creditors in a state of limbo until the case is finally closed. In complex and protracted cases the two-year limitation could be effectively massaged so that a creditor successfully passing the scrutiny of one trustee would repeatedly be forced to go through the same gauntlet. This is not what the statute intends. Once a permanent trustee is appointed under section 702, the two-year limitation period commences to run irrespective of whether a successor is later appointed. *E.g., In re Chequers, Ltd.,* 59 B.R. 177 (Bankr.W.D. Pa.1986).

■ The two-year limitation period expired in December 1983 some three years and three months prior to commencement of the instant action. Hence the court concludes that the Trustee is barred by operation of section 546(a) from maintaining either a section 544 avoidance action or a section 547 preferential transfer action.

### 3.

■ The limitation provision of section 546(a) is confined to those Code sections specifically enumerated therein. It does not operate to foreclose a trustee from avoiding post-petition transfers of estate property that were not authorized under the Code or by the court. Section 549(a) provides:

(a) Except as provided in subsections (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

Section 549(a) has been characterized as both a turnover provision and an avoidance provision. By it a trustee can recover for the estate any estate property that was transferred to a creditor post-petition and which was not authorized by either the Bankruptcy Code or the court. Sections 541 through 548 outline the specific powers of a trustee to avoid liens and recover property for the estate. Whereas section 546(a) is directed at pre-petition transfers, section 549(a) is directed at post-petition transfers. It provides the authority by which a trustee can avoid any post-petition transfer which occurs in violation of one of the enumerated lien avoidance statutes including sections 544 and 552. Like section 546, section 549 contains a statute of limitations. Section 549(d) provides that an action to avoid a post-petition transfer may not be commenced after the earlier of—

(1) two years after the date of the transfer sought to be avoided; or

(2) the time the case is closed or dismissed.

The ability of a trustee to avoid post-petition transfers is, by the language of section 549(a), made entirely discretionary—"the trustee *may* avoid a transfer—" 11 U.S.C. § 549(a) (emphasis added).

It is by virtue of section 550(a) and section 541(a)(3) that interests in property successfully recovered by the trustee are brought back into the estate. Section 541(a)(3) provides that an estate is comprised of any interest in property that the trustee recovers under section 550. Section 550, in turn, provides that a trustee may recover for the estate any property to the extent its transfer is avoided under sections 544, 545, 547, 548, 549, 553(b) or section 724(a). The only means by which unauthorized post-petition transfers can be avoided is by virtue of section 549. If avoidance of an otherwise invalid post-petition transfer is foreclosed by tolling of the

section 549(d) statute of limitations, then the property transferred cannot be brought back into the estate. The interrelationship between section 541, 550 and 549 is important to this discussion because the trustee argues that the section 549(d) statute of limitations does not apply to section 552. Section 552(a) provides that any security interest given by a debtor prior to commencement of the bankruptcy case does not attach to property which is acquired by the estate after case commencement. *See generally, In re Pigeon,* 49 B.R. 657 (Bankr.D.N.D.1985). Section 552, however, does not have a self-contained provision for avoidance of the infirm security interest by the trustee nor does it provide a method of recovery by the trustee of collateral or interests in collateral transferred post-petition to a creditor. Even though section 552(a) cuts off a creditor's pre-petition lien in property acquired by the estate post-petition, such result does not automatically cause a return of such collateral or interest in collateral to the estate. The return is implemented by section 550 and 549.

In this case the Trustee is seeking to recover a $27,500.00 cash payment made by his predecessor to the Bank on January 8, 1982, and which was applied by the Bank to certain outstanding accounts of the Debtor. The trustee is also seeking recovery of $28,287.00 of the Debtor's accounts receivables deposited in the Debtor's collateral account on deposit with the Bank between January 12, 1982, and September 30, 1982. The Bank, believing the accounts had been effectively abandoned, withdrew the $28,-287.00 and at various times between February 25, 1982, and April 4, 1984, applied it to the Debtor's outstanding account balances.

■ Whether or not the Bank's security interest in the accounts receivables are subject to attack under section 552 as post-petition generated property is an issue secondary to that of when the transfer of the accounts to the Bank occurred. If the transfer, even though subject to a section 552 attack, occurred outside of the two-year statute of limitations then the trustee cannot recover them for the estate because the estate's interest would not supersede

that of the Bank's. Section 101(50) of the Code defines a "transfer" as every mode direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property. In this case a transfer of the Debtor's accounts receivables occurred when they were applied by the Bank to the outstanding indebtedness. The transfers complained of by the Trustee were complete by April 4, 1984, which was two years and eleven months before the instant case was commenced. The action for recovery of post-petition transfers is barred by the section 549(d) statute of limitations and the Trustee is foreclosed from recovering any post-petition account transfers which might be infirm by reason of section 552(a).

4.

Although the abandonment by the Trustee's predecessor, Mr. Brigham, was ineffective with the result that the $27,500.00 in cash and other account receivable proceeds remained property of the estate, turnover will not be ordered. Section 542(a) excepts from turnover any property which is of inconsequential value or benefit to the estate. Because the Bank had a perfected security interest in all accounts and contract rights existing or later acquired, its security interest in the Debtor's accounts receivables is paramount to that of the Trustee unless its security interest is amenable to avoidance and recovery under one of the Code provisions for avoidance and recovery. Because the statute of limitation provisions of sections 546 and 549 tolled in December 1983 and April 1986 respectively, the Trustee has no means by which to avoid liens and transfers whether accruing pre- or post-petition. Hence, the Bank's interest in the $27,500.00 and the other account proceeds remains paramount to any claim of the Trustee and the accounts thereby are of inconsequential value to the estate.

Accordingly, IT IS ORDERED that summary judgment of dismissal be entered in favor of the defendant, Norwest Bank, Bis-

marck, North Dakota, and against the plaintiff Trustee, William P. Westphal.