**In re LURIA STEEL AND TRADING CORPORATION, debtor, d/b/a Erman Howell Division, Debtor.**

**William H. GRABSCHEID, Trustee, Plaintiff/Appellant,**

**v.**

**DENBO IRON & METAL CO., INC.; Denbo Scrap Materials, Inc.; Dixon Iron & Metal, Inc.; Elgin Salvage & Supply Co., Inc.; Frank Sherman Company; Industrial Metal Processing, Inc.; Inland Steel Ind.; Shorty's Truck & Railroad Car Parts, Inc., f/k/a Shorty's Truck Sales; Northeast Metal Processors, Inc.; Modern Drop Forge Co.; Newman/Allen Enterprises, Inc., f/k/a Sam Allen & Son, Inc., Mervis Industries, Inc., a/k/a, Mervis & Sons; Charles Smith, d/b/a Lakeside Trading Company; Leroy Iron & Metal, Inc.; and Linda Douglass, Marcia Nordstrom, E. Bruce Luria, Leanne Goodfriend, Donald Luria and Robert Luria, Defendants/Appellees.**

Nos. 94 CV 2428, 94 CV 2427, 94 CV 2426, 94 CV 2425, 94 CV 2424, 94 CV 2423, 94 CV 2422, 94 CV 2421, 94 CV 2420, 94 CV 2419, 94 CV 2418, 94 CV 2415, 94 CV 2414, 94 CV 2413 and 94 CV 2898.
**Bankruptcy No. 91 B 9694.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 29, 1995.

Ellis Rosenzweig, Charles Schulman, Sachnoff & Weaver, Chicago, IL, for William Grabscheid, Trustee.

William Shinn, Harris Caddell & Shanks, Decatur, AL, for Denbo Iron and Metal.

Janet Henderson, Brad Erens, Sidley & Austin, Chicago, IL, for Denbo Scrap Materials.

Stephen Bobo, David Newby, D'Ancona & Pflaum, Chicago, IL, for Dixon Iron & Metal and Mervis Indus.

Mary Ellen Balaguer, Brittain & Ketcham, Carpentersville, IL, for Elgin Salvage and Supply.

Joseph Lucci, Nadler, Nadler & Burdman, Youngstown, OH, for Frank Sherman Co.

Chad Gettleman, Adelman, Gettleman & Merens, Chicago, IL, for Industrial Metal Processing and Northeast Metal Processors.

Louis Hegeman, Gould & Ratner, Chicago, IL, for Inland Steel Industries.

William Connelly, Hinshaw & Culbertson, Chicago, IL, for Leroy Iron & Metal.

James Chatz, Chicago, IL, for Charles Smith.

Michael Eidelman, Mark Rubin, Altheimer & Gray, Chicago, IL, for Mervis Industries and Newman/Allen Enterprises.

Michael Gesas, William King, Jr., Gesas, Pilati & Gesas, Chicago, IL, for Modern Drop Forge.

Richard Reibman, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, Northeast Metal Processors and Shorty's Truck & R.R. Car Parts.

## MEMORANDUM AND ORDER

MANNING, District Judge.

This matter is before the court on appeal from the decision of the United States Bankruptcy court for the Northern District of Illinois dismissing plaintiff's adversary complaint. The court having reviewed the record and having considered the briefs of the respective parties, affirms the decision of the bankruptcy court.

■ The United States District courts have jurisdiction over appeals from final judgments and final orders in bankruptcy cases pursuant to 28 U.S.C.A. § 158(a). This court is constrained to accept the Bankruptcy court's finding of fact unless clearly erroneous. *Matter of Excalibur Auto Corp.*, 859 F.2d 454, 457 n. 3 (7th Cir. (Wis.) 1988) (construing Rule 8013, F.R.Bankr.P.). There is no presumption of correctness of the Bankruptcy court's conclusions of law; thus, the court reviews de novo issues of law. *Aetna Bank v. Dvorak*, 176 B.R. 160 (Bankr.N.D.Ill. 1994).

## BACKGROUND

The facts are undisputed in this case. William Grabscheid was appointed as the liquidating Chapter 11 trustee on August 28, 1991, and on October 9, 1991, the case was converted to a Chapter 7 and Grabscheid became the Chapter 7 trustee. On September 29, 1993, the Trustee filed an adversary complaint against Defendants (creditors) seeking to recover alleged preferential payments under Section 550 and 547 of the Bankruptcy Code. The fifteen defendants moved to dismiss the adversary complaints, maintaining that the Trustee had failed to bring timely preference claims within the two year limitations period set forth in § 546(a)(1) of the Code.

On March 4, 1994, the bankruptcy court, pursuant to 11 U.S.C. § 546(a)(1) dismissed the adversary proceeding against the defendants. The bankruptcy court held that the preference claims were barred by the two-year statute of limitation contained in 11 U.S.C. § 546(a)(1) of the Code. *In re Luria Steel and Trading Corp.*, 164 B.R. 293, 296 (Bankr.N.D.Ill.1994). The matter is now before this court on Trustee's appeal. For the reasons which follow the bankruptcy court is affirmed.

## DISCUSSION

■ The crux of this appeal is the interpretation of § 546(a)(1) of the Bankruptcy code. That section provides, in pertinent part, as follows:

§ 546. Limitations on avoiding powers.

(a) An action or proceeding under Section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under Section 702, 1104, 1163, 1302 or 1202 of this title: or

(2) the time the case is closed or dismissed.

It is the appellant's contention that the above referenced statute begins to run anew after the conversion of a case from a Chapter 11 bankruptcy proceeding to a Chapter 7 bankruptcy proceeding. He also asserts that the statute does not limit the commencement of actions or proceedings to two years after the appointment of "any" trustee but rather limits the commencement of actions of "each" trustee to two years after the appointment of that trustee. Thus, he maintains, § 546(a)(1) lends itself to statutory interpretation. Conversely, the appellees' respond that the plain and unambiguous language of Section 546(a)(1) of the Bankruptcy Code compels the conclusion that the statute of limitations

expired two years after appellant's appointment as the Chapter 11 trustee and was not revived by appellant's subsequent appointment as the Chapter 7 trustee.

The issue on appeal is whether the Bankruptcy court erred in holding that a single limitations period for Section 546(a)(1) of the Bankruptcy Code will apply when there is a Chapter 11 conversion to a Chapter 7.

Since the Seventh Circuit has not ruled on this precise issue, this court will examine district and bankruptcy rulings from its own district for guidance as well as decisions of other circuits. The bankruptcy court in the instant case held that the limitations period of § 546(a)(1) expires two years after the first trustee is appointed, regardless of whether the case is later converted to a proceeding under a different chapter of the Code. *Luria Steel,* 164 B.R. at 296. The court reasoned that the purpose of the limitations period for recovery of preferential transfers is to provide "finality for creditors who have received payments from the debtor." *Id.* at 296. Moreover, the court determined that the focus of statutes of limitations is to protect defendants (creditors) not to provide a clean slate for new trustees. *Id.* The court concluded that the Chapter 11 trustee sat on his rights; therefore, he should not be permitted to convert the case to a Chapter 7 and then reopen his "window of opportunity" to pursue stale preference actions. *Id.*

On the other hand, another bankruptcy judge held, in *In re SSS Enterprises, Inc.,* that where there is a conversion from a Chapter 11 to a Chapter 7, the limitations period of § 546(a)(1) begins to run anew for the Chapter 7 trustee. 145 B.R. 915, 917 (Bankr.N.D.Ill.1992). First, the court examined the Bankruptcy Act and its amendments, and concluded that under the Act each trustee had a new two year period in which to act. The court upon embarking to examine legislative history of § 546(a)(1) determined that there was "little legislative history." Hence, the court concluded that

Congress must not have intended to change the existing law because if Congress wanted to change the existing law it would be clearly indicated in the legislative history. The court focused on the distinction between the goals of a Chapter 7 trustee and Chapter 11 trustee. *Id.* at 918. The court stated that a Chapter 11 trustee may be motivated not to sue a potential preference or fraudulent conveyance defendant in order to induce that potential defendant to continue to fund a Chapter 11 reorganization effort. This motivation ceases when the case is converted to a Chapter 7. *Id.* The court reasoned that the policy considerations pointed towards granting the permanent Chapter 7 trustee, appointed after a conversion of a case from a Chapter 11, a "new" two year limit in which to pursue actions under § 546(a)(1). *Id.* at 916–17.

This court disagrees with the *SSS Enterprises* court's plain meaning approach to statutory interpretation which supports the trustee's argument that a Chapter 7 trustee, appointed after conversion of the case from Chapter 11, has a "new" two year limit in which to pursue action. *Id.* Furthermore, this court disagrees that there is little legislative history regarding § 546(a)(1). There is significant legislative history or enough legislative history to enlighten this court to the drafters' intent concerning the statute. (See legislative discussion *Infra* p. 10.)

The court concluded in *In re Lyons,* that once the § 546(a)(1) limitations period begins to run, all later appointed trustees are bound by its two year time bar. 130 B.R. 272 (Bankr.N.D.Ill.1991). The court held that according to the plain meaning of the statute, there is only one limitations period under § 546 which binds all trustees who serve in the case.[1] *Id.* at 276. *See also In re Missouri River Sand & Gravel,* 88 B.R. 1006, 1012 (Bankr.D.N.D.1988).

Several circuit courts have reached similar conclusions, including the Ninth Circuit. That court held in *In re San Joaquin Roast*

---

1. In *Lyons,* an interim Chapter 7 trustee filed a No–Asset Report after the meeting of creditors. The court approved the report and discharged the trustee. Several months later, a new Chapter 7 trustee was appointed. The new trustee sought recovery of allegedly voidable transfers. The complaint was filed within two years of the second trustee's appointment, but more than two years after the appointment of the initial trustee. *Id.* at 276.

*Beef,* that the two year limitations period for bankruptcy trustees to bring "adversary proceedings did not begin to run anew after the proceeding was converted from Chapter 11 to Chapter 7 and a new trustee was appointed ..." 7 F.3d 1413, 1415 (9th Cir.1993). Similarly, in cases where successor trustees in Chapter 7 cases are bound by the inaction of preceding Chapter 7 trustees. *Missouri Gravel,* 88 B.R. at 1012. *See also In re Ollada,* 114 B.R. 654, 655 (Bankr.E.D.Mo. 1990) (holding that the appointment of a successor or a successor's successor is not a basis upon which the time period is to be restarted); *In re Chequers, Ltd.,* 59 B.R. 177 (Bankr.W.D.Pa.1986).

Additionally, with debtor-in-possession cases [2], the Third, Ninth and the Tenth Circuits all held that the two year limitation period of § 546(a)(1) applies to debtors-in-possession. *Luria Steel,* 164 B.R. at 295. The Tenth Circuit construed § 546(a)(1) in light of § 1107(a), which says that debtors-in-possession shall have the same powers as trustees. *In re Softwaire Centre Int'l Inc.,* 994 F.2d 682, 683 (9th Cir.1993) (quoting *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1523–24 (10th Cir.1990)). See, 11 U.S.C. 1107(a) (1988). Moreover, the Tenth Circuit in *Zilkha Energy Co.,* reasoned that Congress did not intend to limit actions filed by an appointed trustee to two years without making the same restriction apply to a debtor in possession who is the functional equivalent of an appointed trustee. *Zilkha Energy Co.,* 920 F.2d at 1523. The *Zilkha* court reasoned that § 546(a)(1) applied to actions filed by a debtor-in-possession. The court concluded that the period of limitation begins to run from the date of the filing of a petition for a reorganization under Chapter 11. *Id.*

The Eighth Circuit has also addressed this issue in great detail. For example, in *McCuskey v. Central Trailer Services, Ltd.,* the debtor operated as a debtor-in-possession for approximately six months until a Chapter 11 trustee was appointed. 37 F.3d 1329 (8th Cir.1994). The Chapter 11 trustee maintained the case as a Chapter 11 for seven months. Then the case was converted to a Chapter 7 and a Chapter 7 trustee was ap-

pointed. *Id.* The issue in this case was whether the two year statute of limitations begins to run anew with the appointment of subsequent trustees or whether such trustees are subject to the initial statute of limitations triggered by the appointment of the first trustee. The court ruled that the statute of limitations on preference avoidance proceedings began to run from the date of the Chapter 11 trustee's appointment, and did not begin to run anew, following conversion of the case, upon a Chapter 7 trustee's appointment. *Id.* at 1331–32. The *McCuskey* court determined that § 546(a)(1) was to bring finality to an issue and to prevent stale claims. *Id.* at 1332. The court concluded that there was no indication anywhere in the Bankruptcy Code or the policies underlying § 546(a)(1) that Congress intended courts construing the statute to make the well-established purposes of statutes of limitation subservient to considerations of a Chapter 7 trustee's ability to maximize the Chapter 7's estate after a case is converted from a Chapter 11. *Id.*

Accordingly, in the case at bar, this court concurs with the bankruptcy court and the Eighth Circuit regarding the policy of protecting creditors from defending against stale claims. The Bankruptcy court states this policy has force in the "context of preferences where there is no wrongdoing on the part of the creditor receiving payment." However, but for the intervening bankruptcy, there would be no reason to challenge the propriety of the payment. Furthermore, if the "policy was not in place for more complex and protracted cases, the two year limitation could be effectively manipulated so that a creditor successfully passing the scrutiny of one trustee would repeatedly be forced to go through the same gauntlet." *Id.* Contrarily, this is not what the statute intended.

 When a court has to interpret statutory provisions, it is necessary to first analyze the language of the statute itself. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 684–85, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985); *In re Maxway Corp.,* 27 F.3d 980, 982 (4th Cir.1994). "If the statutory lan-

---

**2.** Debtor-in-possession defined in U.S.C. 1101(1).

guage is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (quoting from *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981)), (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). In trying to find understanding of a statutory scheme, the court will start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used. *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962).

The plain language of § 546(a)(1) clearly states that the two-year statute of limitations begins to run from the date a trustee is appointed. However, the plain language becomes problematic in statutory interpretation of the operative phrase "the appointment of a trustee." The phrase begs the question as to whether the statute of limitations begins to run with an appointment of the first trustee or does the statute of limitations period begin to run with the appointment of a new trustee after there has been a conversion? *See also Lyons,* 130 B.R. at 277, (quoting from *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)) (the statutory language of § 546(a) is unambiguous and must be given its plain meaning). *See also McCuskey,* 37 F.3d at 1331; *San Joaquin,* 7 F.3d at 1415; (the "plain meaning" of § 546(a)(1) dictate a policy of finality and prevent stale claims which underlie statutes of limitations).

▪ The U.S. Supreme Court has held that in construing the Bankruptcy Code, the "plain meaning of legislation should be conclusive, except in the 'rare' cases in which the literal application of the statute will produce a result demonstrably at odds with the inten-

tion of the drafters ... Thus, in such cases, the intention of the drafters, rather than the strict language, will control." *Ron Pair Enterprises, Inc.,* 489 U.S. at 242, 109 S.Ct. at 1031.

▪ Courts should and must seek interpretation outside of the natural reading of the statute only in the following instances. First, it must determine if the language is unclear and ambiguous. Likewise, if the language is plain and the statutory scheme is coherent and consistent, there is no need to inquire further. *Ron Pair Enter.,* 489 U.S. at 240–41, 109 S.Ct. at 1030. Second, there is clearly expressed legislative intent to the contrary. *Russello,* 464 U.S. at 20, 104 S.Ct. at 299. Third, a literal application of the statute would frustrate its purpose. *Griffin v. Oceanic Contractors Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). Lastly, a literal interpretation of the statute would result in an absurd conclusion. *United States v. American Trucking Assn's,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940).

This court disagrees with appellees that the language of § 546(a)(1) is clear and unambiguous. The statutory interpretation is problematic, unclear and leaves room for doubt of the meaning of § 546(a)(1). Therefore, the legislative purpose of the statute must be examined.

▪ In examining the legislative history behind § 546(a)(1), it is clear that the various Committees did concur that a statute of limitations is to provide certainty for potential litigants and to require that actions be commenced within a reasonable time. This affords those litigants against whom claims may be asserted a definite period of time during which they are on notice of risk of a lawsuit so that their ability to defend against such claims is not unduly prejudiced.[3] Pro-

---

3. Sponsors of the H.R. 5116 bill which became the Bankruptcy Reform Act of 1994 stated: "We urge the Committee to clear up the substantial disagreement among the bankruptcy courts concerning application of the two-year statute of limitations contained in Section 546(a)(1) of the

Bankruptcy Code." This section requires that avoidance actions to recover money or property transfers prior to bankruptcy be brought within two years of the 'appointment of a trustee.'" 1994 WL 442149 (F.D.C.H.) (1994).

viding certainty as to a single two-year statute of limitations would serve the purposes of expediting consideration of avoidance claims available to an estate and reducing the time, duration, and expense attributable to certain unnecessarily prolonged bankruptcy cases. 1994 WL 442149 (F.D.C.H.) 1994.

■ In looking at the legislative history, it is clear that § 546(a)(1) needed clarification. The legislative intent for § 546(a) requires that an avoidance action be brought within two years of the filing of a Chapter 11 petition, even if a trustee or other estate representative is subsequently appointed or the case is later converted. Hence, under § 546(a)(1) if a trustee is appointed after the current two year statute of limitations expires, any actions which the trustee may discover are time-barred. 140 Cong.Rec. S14461–01 (1994). The purpose behind § 546(a)(1) is to prevent prejudice against potential defendants that would result from having to defend stale claims and should encourage estate representative or trustees to investigate and resolve actions earlier in a bankruptcy case, thus, minimizing estate expenses and maximizing the value of the estate to all creditors. *Id.* This court is convinced that the legislative intent in amending § 546(a)(1) was to balance the rights of all parties by preserving the two year statute of limitations for the first trustee.[4]

We must be mindful that statutes of limitations are to close the window of opportunity and bring closure to an issue and to prevent stale claims. Moreover, the purpose of the statute is to limit a trustee to a two year time frame. To continue to resurrect avoidance preference claims because of a conversion is ludicrous. The statute of limitations should not be subservient to the trustee's whims. Thus, this court will close the window of opportunity and not contradict the purpose of § 546(a).

The court concludes that the bankruptcy court's ruling that the preference claims were barred by the two-year statute of limitation regardless of whether the case is later converted under a different chapter of the Code is the correct one. The bankruptcy court's analysis is logical, practical and consistent with the legislative intent of the statute.

### CONCLUSION

For reasons discussed above the bankruptcy court's decision is affirmed.

---

4. On October 4, 1994, Congressman Jack Brooks of Texas, a major sponsor of H.R. 5116 bill placed in the Congressional Record a section by section analysis of H.R. 5116 which stated the following in respect to the amendment to § 546(a)(1): This section 216 clarifies section § 546(a)(1) of the Bankruptcy Code which imposes a two year statute of limitations within which an appointed trustee must bring an avoidance action. The purpose of a statute of limitations is to define the period of time that a party is at risk of suit. The statute of limitations will be 2 years from the entry of an order of relief or 1 year after the appointment of the first trustee if such appointment occurs before the expiration of the original 2 year period. 140 Cong.Rec. H10752–01, H10768 (1994).

However, after passage of the 1994 Act by Congress, but before it was signed into law by President Clinton, Congressman Brooks deleted the above-mentioned statement from the record and inserted in section 216 which would further clarify § 546(a)(1) of the Bankruptcy Code as being 2 years from the entry of an order of relief or 1 year after the appointment of the first trustee if such appointment occurs before the expiration of the original 2 year period. "An Adoption of this section is not intended to affect the validity of any tolling agreement or to have any bearing on the equitable tolling doctrine where there has been fraud determined to have occurred." 140 Cong.Rec. E2204–01 (1994).