**In re Timothy F. LYONS, Debtor.**

**Catherine STEEGE, Trustee, Plaintiff,**

**v.**

**Mary T. LYONS, Defendant.**

**Bankruptcy No. 88 B 03578.**
**Adv. No. 91 A 00300.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 30, 1991.

---

Catherine Steege, Rachel R. Schulman, Jenner & Block, Chicago, Ill., trustee.

Joseph McJohn, Chicago, Ill., for Mary T. Lyons.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on a motion to dismiss filed by the defendant, Mary T. Lyons ("Mary Lyons"). For the reasons set forth herein, the Court hereby allows the motion to dismiss.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H) and (O).

## II. FACTS AND BACKGROUND

The relevant facts in the instant matter are not in dispute. On March 7, 1988, the Debtor filed a Chapter 7 petition. On the Schedule B–1 of real property, the Debtor indicated that he did not have an interest in any real property. Joseph Stein ("Stein") was appointed as the interim trustee pursuant to 11 U.S.C. § 701. Subsequently, on May 11, 1988, Stein concluded a meeting of creditors under 11 U.S.C. § 341, originally scheduled for April 13, 1988. On May 16, 1988, Stein filed a "Report of Trustee in No–Asset Case" ("No–Asset Report"), indicating that there were no assets in the estate to be administered for the benefit of the creditors. The following day, the Court approved the No–Asset Report and discharged Stein as trustee.

On January 12, 1989, counsel for a creditor, Merrill Lynch, Pierce, Fenner & Smith, contacted Stein alleging that the Debtor had fraudulently transferred the beneficial interest in an Illinois land trust, which held title to his home, to his non-debtor spouse, Mary Lyons. Pursuant thereto, on February 8, 1989, Stein appeared before the Court on a motion requesting entry of an order allowing his resignation because the Debtor had consulted with another attorney in Stein's law firm about the matter without Stein's prior knowledge; appointing a new interim trustee; and vacating the No–Asset Report. In accordance with Stein's request, on that same date, the Court entered an Order authorizing Stein to withdraw as interim trustee, vacating the No–Asset Report, and directing the appointment of a new interim trustee. On February 28, 1989, the Clerk of the Court sent another notice to all creditors indicating, *inter alia,* that Catherine Steege (the "Trustee") was appointed as interim trustee and a new section 341 meeting would be held on March 22, 1989. On that date, the Trustee convened the meeting, but continued same until April 25, 1989. Pursuant to 11 U.S.C. § 702(d), the Trustee became the permanent trustee because the creditors did not elect a different trustee at that section 341 meeting of creditors. Most significantly, in her pleadings, the Trustee alleges that she first became aware of the alleged voidable transfers on April 25, 1989, when she was supplied with the documentation relating thereto from the Debtor. The Debtor was subsequently granted a discharge on October 24, 1989.

On March 21, 1991, within two years after the first date of the new section 341 meeting, but more than two years after Stein's appointment as the initial Chapter 7 trustee at the conclusion of the May 11, 1988 first section 341 meeting, the Trustee filed a complaint against Mary Lyons pursuant to 11 U.S.C. §§ 544(b) and 550(a)(1) and Ill.Rev.Stat. ch. 59, para. 4 (1987). The complaint seeks to avoid and recover the

transfer from the Debtor to Mary Lyons of two interests in property as fraudulent conveyances. The Trustee further seeks the recovery of the property or the value of the property transferred. Specifically, the Trustee alleges in the complaint that Mary Lyons and the Debtor had previously acquired joint ownership of real estate located at 11124 Forest Woods Drive, Willow Springs, Illinois (the "Forest Woods property"). On February 13, 1986, the property was conveyed to LaGrange Bank and Trust Company (the "Bank") as trustee under an Illinois land trust in which Mary Lyons holds all of the beneficial interest in the res of the trust. The same day, Mary Lyons and the Debtor placed another parcel of real estate commonly known as 8316 Chelsea Lane, Willow Springs, Illinois (the "Chelsea Lane property"), in another land trust with the Bank as land trustee and Mary Lyons as the sole holder of the beneficial interest. On October 17, 1986, the Debtor and Mary Lyons caused the Forest Woods property to be conveyed to Michael and Sheri Norbett for $98,000.00, of which $30,888.50 was paid in cash to the Debtor and Mary Lyons. The complaint further alleges that the Debtor did not receive any consideration in exchange for the transfers to Mary Lyons which were made with the intent to delay, hinder and defraud the creditors of the Debtor. Thus, such transfers to Mary Lyons are voidable fraudulent conveyances. None of these transfers were disclosed on the Debtor's bankruptcy schedules.

On April 23, 1991, Mary Lyons filed the instant motion to dismiss arguing that pursuant to 11 U.S.C. § 546(a)(1), the Trustee is barred from pursuing this action. Mary Lyons claims that that statute of limitations began to run on the date that Stein was appointed in 1988, not when Catherine Steege became the "successor" Trustee in 1989. The Trustee responds by initially arguing that the doctrine of equitable tolling should be applied so as toll the statute of limitations until April 25, 1989, which is the date she uncovered the operative facts underlying the fraudulent transfers. In the alternative, The Trustee contends that the statute of limitations did not begin to

run until she became the permanent Trustee.

Mary Lyons replies by citing case authority holding that the two year limitations period prescribed by section 546 begins running with the appointment of the original trustee and binds a successor trustee. She also claims that the doctrine of equitable tolling is inapplicable because the underlying facts were known within the statutory period of section 546(a), and hence, chargeable to the Trustee. Furthermore, she asserts there was no fraudulent concealment that would give rise to the tolling of the statute of limitations.

## III. STANDARDS AND AUTHORITIES

### A. *MOTION TO DISMISS*

No specific Federal Rule of Civil Procedure was cited. The Court will assume, however, that Mary Lyons seeks to dismiss the matter pursuant to Rule 12(b)(6), incorporated by reference in Federal Rule of Bankruptcy Procedure 7012. In order for Mary Lyons to prevail on the motion to dismiss, it must clearly appear from the pleadings that the Trustee can prove no set of facts in support of her claims which would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Meriwether v. Faulkner*, 821 F.2d 408, 411 (7th Cir.1987), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *Doe v. St. Joseph's Hospital*, 788 F.2d 411, 414 (7th Cir.1986); *Swanson v. Wabash, Inc.*, 577 F.Supp. 1308 (N.D.Ill.1983). The Seventh Circuit has emphasized that "[d]espite their liberality on pleading matters ... the federal rules still require that a complaint allege facts that, if proven, would provide an adequate basis for each claim." *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988). It is well established that alleging mere legal conclusions, without a factual predicate, are inadequate to state a claim for relief. *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Moreover, the Court must take as true all well-pleaded material facts in the complaint and

must view these facts and all reasonable inferences which may be drawn from them in a light most favorable to the Trustee. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2332, 81 L.Ed.2d 59 (1984); *Infinity Broadcasting Corp. v. Prudential Ins. Co.*, 869 F.2d 1073, 1075 (7th Cir.1989); *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611 (7th Cir.1989); *Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987); *Meriwether v. Faulkner*, 821 F.2d at 410; *Ellsworth v. Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). The issue is not whether the Trustee will ultimately prevail, but whether the Trustee has pleaded a cause of action sufficient to entitle her to offer evidence in support of her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### B. *11 U.S.C. § 546(a)*

█ 11 U.S.C. § 546(a) provides:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). This section does not apply to actions outside the Bankruptcy Code sections enumerated therein. *See In re Coan*, 96 B.R. 828, 831 (Bankr.N.D.Ill. 1989); *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 610 (Bankr.S.D.N.Y.1986).

11 U.S.C. § 702 provides in pertinent part:

(b) *At the meeting of creditors held under section 341* of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote....

 . . . . .

(d) If a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case.

11 U.S.C. § 702(b) and (d) (emphasis added). Most courts hold that pursuant to sections 546(a) and 702, the two year statute of limitations under section 546(a) does not begin to run until the election or qualification of a trustee ("permanent" as distinct from "interim") at the section 341 meeting of creditors. *In re Conco Bldg. Suppliers, Inc.*, 102 B.R. 190, 191–192 (9th Cir.BAP 1989); *In re Hansen*, 114 B.R. 927, 929 (Bankr.N.D.Ohio 1990); *In re Metro Shippers, Inc.*, 95 B.R. 366, 369 (Bankr.E.D.Pa. 1989); *In re Young*, 97 B.R. 679, 680 (Bankr.N.D.Ga.1988); *In re O'Neill*, 94 B.R. 739, 741 (Bankr.M.D.Fla.1988); *In re Southard*, 91 B.R. 160, 163 (Bankr. M.D.Fla.1988); *In re Afco Dev. Corp.*, 65 B.R. 781, 785 (Bankr.D.Utah 1986); *In re North American Dealer Group, Inc.*, 62 B.R. 423, 426 (Bankr.E.D.N.Y.1986); *In re Outlet Dept. Stores, Inc.*, 49 B.R. 536, 538 (Bankr.S.D.N.Y.1985); *In re Sin–Ko, Inc.*, 48 B.R. 180, 181 (Bankr.N.D.Ohio 1985); *In re Black and Geddes, Inc.*, 35 B.R. 827, 828–829 (Bankr.S.D.N.Y.1983); *In re Killian Construction Co.*, 24 B.R. 848, 849–850 (Bankr.D.Idaho 1982). There is a split of authority on whether there is a single two year limitations period for all trustees in a case, or whether a successor trustee is afforded a separate two year period within which to sue, commencing from the time of the successor's appointment.

The majority view holds that there is only one limitations period applicable to all trustees who serve in the case. Under that application of section 546(a), the Trustee's complaint appears to be untimely as it was filed approximately three years after the initial appointment of Stein as trustee. Relying on the plain language of the statute, several courts have refused requests by successor trustees for additional time to bring actions. *In re Ollada*, 114 B.R. 654, 656 (Bankr.E.D.Mo.1990); *In re Sandra Cotton, Inc.*, 92 B.R. 595, 597 (Bankr. W.D.N.Y.1988); *In re Missouri River Sand & Gravel, Inc.*, 88 B.R. 1006, 1012 (Bankr.D.N.D.1988); *In re Chequers, Ltd.*, 59 B.R. 177 (Bankr.W.D.Pa.1986). The court in *Missouri River Sand & Gravel* in support of this proposition stated:

A successor Chapter 7 trustee is just that—a successor. He succeeds to the case and everything that has transpired in it up to the date of his appointment.

If a predecessor Chapter 7 trustee has validly abandoned property, the successor trustee cannot undo it. If his predecessor has consumed the two-year limitation period of section 546(a) the successor trustee cannot do what his predecessor failed to do. Otherwise, the statute of limitations would be a nullity with creditors in a state of limbo until the case is finally closed.

88 B.R. at 1012. Thus, some courts have interpreted the words *"a trustee"* in section 546(a) to reference *"any* trustee."

Conversely, other courts have cited equitable policy reasons as a basis for extending the limitations period for successor trustees, principally because of the different objectives a trustee would pursue under different chapters of the Bankruptcy Code. *See In re Grambling,* 85 B.R. 675, 676–677 (Bankr.D.Conn.1988) ("chapters 7, 11, 12, and 13 are materially dissimilar, and a new trustee must have the right to exercise his or her authority under the converted case."); *In re Moody,* 77 B.R. 566, 573–574 (S.D.Tex.1987), *aff'd,* 862 F.2d 1194 (5th Cir.1989); *Afco,* 65 B.R. at 786–789. This other view concludes that the reference means "each trustee."

In *Afco* at 783–785, Judge Clark further construed the legislative history and case authority under the former Bankruptcy Act to conclude that Congress did not intend to fundamentally change existing law with respect to limitations actions based on avoiding powers by trustees. He noted that prior to the enactment of section 546(a), there was no separate statute of limitations on a trustee's avoiding powers. The sparse legislative history of section 546(a), however, contains no language to support the conclusion that "each" or "every" trustee has a separate two years after appointment within which to act. The legislative history of section 546(a) is silent on the matter of successor trustees and converted cases.

Judge Schiff in *Grambling* at 676, also focused on the disjunctive "or" in section 546(a)(1), noting that section 102(5) states that the word is not exclusive, and thus, was not used to limit the commencement of actions. His resort to section 102(5) and its legislative history, however, is premised on the conclusion that section 546(a)(1) is ambiguous with which this Court disagrees. Congressional use of the article "a", rather than some other word, is not inherently ambiguous or confusing. The first letter in our alphabet cannot be further reduced or simplified. In the context of this matter, the first trustee appointed was Stein who was "a" trustee. Computing the two year limitations from the date of his appointment is neither ambiguous nor confusing. Hence, the Court will not infer such a congressional intent and respectfully declines to follow this line of authorities.

There does not appear to be a controlling precedent on this issue from the Seventh Circuit or the United States Supreme Court. The Court is of the opinion that the majority view comports with the plain meaning of section 546(a), as well as the clear and unambiguous statutory text under the Supreme Court's recently expressed approach in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Had Congress wanted to provide an exception to the statute or a subsequent two year limitations period for a successor trustee, it could have so legislated with ease. For example, Congress has recently added the provisions of section 546(g) regarding "swap" agreements.

The existing language of section 546(a) contains no special provision or exception, but begins running after the appointment of "a" trustee not "each" trustee, or the "last" trustee, and the Court finds same to be unambiguous. Those cases like *Afco* and *Grambling* following the minority view, have judicially created an exception not based upon the statutory text, nor supported in the legislative history to section 546(a) which makes no distinction or reference to conversion of a case from one chapter to another or the appointment of a successor trustee as triggering a new two year limitations period. H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 87 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5873, 6327. The above rationales

stated in *Afco* and *Grambling* are particularly inapposite to the case at bar because this has always been a Chapter 7 case and has never been converted. Accordingly, the Court declines to follow the minority view.

C. *11 U.S.C. § 544(b) INVOKING ILL. REV.STAT. CH. 59, PARA 4 (1987) AND APPLICABILITY OF CH. 110, PARA. 13-205*

■ The relationship between the Illinois fraudulent conveyance statute and 11 U.S.C. § 544(b), the federal statute which gives a trustee the rights of an unsecured creditor must be reviewed. The Trustee's complaint seeks to avoid the February, 1986 transfers of the Forest Woods property and the Chelsea Lane property to Mary Lyons pursuant to section 544(b) and Ill. Rev.Stat. ch. 59, para. 4 (1987). On January 1, 1990, the Illinois legislature adopted the Uniform Fraudulent Transfer Act ("UFTA") which supersedes Ill.Rev.Stat., ch. 59, para. 4. *See* Public Act 86-814 (codified in Smith–Hurd Illinois Annotated Statutes ch. 59, paras. 101–112). UFTA provides that it is "effective" as of January 1, 1990. UFTA does not, however, specifically address whether it is to be applied to cases which were pending as of its effective date, but that involve allegations that earlier transfers were fraudulent conveyances. Generally, there is a presumption that statutory provisions apply prospectively to conduct that occurs on or after the statute's effective date. *Allied Corp. v. Acme Solvents Reclaiming, Inc.*, 691 F.Supp. 1100, 1110 (N.D.Ill.1988). Nevertheless, where legislative intent is clearly to make a new law retroactive to pending cases on prior conduct, that intent will be applied. *In re Busick*, 831 F.2d 745, 748 (7th Cir.1987). There is no indication from the Illinois legislature that the new provisions of UFTA should apply to transfers that occurred before its effective date of January 1, 1990. Consequently, the Court applies ch. 59, para. 4, the statutory provision in effect in 1986, the date of the alleged fraudulent transfers.

The Illinois statute of limitations for fraud actions based on ch. 59, para. 4, is the five year general statute of limitations imposed by Ill.Rev.Stat. ch. 110, para. 13–205 (1989), which provides that "all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued." In Illinois, in cases where its statute of limitations applies, the cause of action accrues when a plaintiff knows or should have known that he was injured. *Wilson v. Board of Education*, 127 Ill.App.3d 433, 436, 82 Ill.Dec. 341, 343, 468 N.E.2d 995, 997 (3d Dist. 1984).

The Trustee, using section 544(b), can pursue the remedies of an existing identified unsecured creditor holding an allowable claim under section 502, who could have pursued that remedy had there not been a bankruptcy proceeding. *See* R. Ginsberg, *Bankruptcy: Text, Statutes, Rules* § 9.02[a] and [b] (2d ed. 1990). As Judge Ginsberg has noted, a trustee seeking to enforce a state remedy under section 544(b) is subject to a "dual" statute of limitations. If the applicable nonbankruptcy limitations period has run at the time the bankruptcy petition is filed, the trustee is estopped from pursuing the action under that statute. The Trustee here was not barred by the five year Illinois statute. The alleged transfers sought to be avoided occurred in 1986 and the Trustee discovered same in 1989. If the creditor into whose shoes the trustee seeks to step (who was not identified in the complaint), however, still had time to pursue the remedy at the time of the petition, the trustee must bring the action within the time fixed by section 546. *Ginsberg*, § 9.07[b] at 727. Thus, in the instant case, the Trustee's complaint is time barred under section 546(a) as not filed within the prescribed two year limitations period.

Several courts have held that the application of the substantive law of the forum state under section 544 includes adherence to the statute of limitations applicable in that forum state, citing *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000 (7th Cir.1984). *See In re Robbins*, 91 B.R. 879 (Bankr.W.D.Mo.1988); *In re Josefik*, 72 B.R. 393 (Bankr.N.D.Ill.1987). Dictum in

*Josefik* noted, "[s]ince the bankruptcy court is applying the forum state's substantive law of fraudulent conveyance in actions brought under Section 544(b), the bankruptcy court is required to apply the forum state's statute of limitations governing fraudulent conveyances." (citation omitted) 72 B.R. at 397 n. 4.

Other courts have held that the federal statute of limitations pursuant to section 546(a) overrides and governs the Trustee's action to avoid a fraudulent conveyance under state law, as authorized by section 544(b). *See In re Dry Wall Supply, Inc.*, 111 B.R. 933, 936 (D.Colo.1990); *In re McGoldrick*, 117 B.R. 554, 561 (Bankr. C.D.Cal.1990); *Hansen*, 114 B.R. at 934; *In re Wilson*, 106 B.R. 125, 126 (Bankr. W.D.Ky.1989); *In re Petty*, 93 B.R. 208, 212 (9th Cir.BAP 1988); *Afco*, 65 B.R. at 785.

The Court declines to apply the cited dictum from the *Josefik* decision to extend the time within which the Trustee could have filed her complaint to avoid the subject transfers. In that case, the plaintiff was not a bankruptcy trustee, but was an actual creditor of the debtor using the state remedy. Hence, section 544(b) was not applicable in that decision because same is only used by a trustee (or a party acting in its behalf) invoking the rights of an unsecured creditor who could have brought the action when the petition was filed. The court in *Hansen* at 932, declined to follow *Josefik*, stating that the footnote must be considered dicta. The Court agrees with with the rationale pronounced by Judge Speer in *Hansen*. The rationale is that the trustee's action to avoid a fraudulent conveyance under state law is a proceeding arising under Title 11 because authorized by section 544(b), and thus, more appropriately subject to the specific federal statute of limitations prescribed by section 546(a).

Accordingly, the Court holds that the statute of limitations set forth in section 546(a) is the applicable statute of limitations in this case. This result is further compelled by the fact that the Trustee became aware of the transfers and documents surrounding the transfers in April,

1989, well within the two year period commencing with Stein's appointment in Spring, 1988 as the original Chapter 7 trustee. The Trustee had approximately one year within which she could have filed her complaint before the limitations period of section 546(a) expired.

## D. DOCTRINE OF EQUITABLE TOLLING

 As a last resort, the Trustee invokes the equitable tolling doctrine to avoid the resulting dismissal of her complaint, otherwise mandated by section 546(a). The doctrine of equitable tolling was initially articulated in *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875). In *Bailey*, the trustee sued the defendant, the debtor and various members of his family seeking to set aside certain conveyances as fraudulent. The debtor argued that the suit was barred by the limitations period set forth in section 2 of the 1867 Bankruptcy Act. The Supreme Court disagreed, finding that mitigating factors existed which made the literal application of the statute of limitations inequitable. The Supreme Court stated:

> To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure.

88 U.S. (21 Wall.) at 349. Accordingly, the Supreme Court held:

> [W]hen there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him.

88 U.S. (21 Wall.) at 349–350.

The Supreme Court subsequently universalized the doctrine of equitable tolling in *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) when it stated that it is "read into every federal

statute of limitations." *See also Sperry v. Barggren*, 523 F.2d 708, 710 (7th Cir.1975). Mary Lyons cites *Wells v. Place*, 92 F.Supp. 477 (N.D.Ohio 1950) for the proposition that the doctrine of equitable tolling has been eliminated. In *Wells*, the district court rejected a trustee's contention that the two year limitations period for avoiding fraudulent transfers pursuant to section 11(e) of the Bankruptcy Act was tolled until the fraud was or could have been discovered. The Court declines to follow *Wells*, as *Bailey* has never been overruled. Moreover, this Court is not bound by decisions from the district court in Ohio. Rather, *Bailey* has been followed by the Seventh Circuit in *Allis–Chalmers Mfg. Co. v. Commonwealth Edison Co.*, 315 F.2d 558 (7th Cir.1963), by which this Court is bound to abide.

■ The Seventh Circuit has held that the doctrine tolls the running of the statute of limitations in two types of fraudulent behavior. First, the statute may be tolled "where the fraud goes undiscovered even though the defendant does nothing to conceal it." *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1004 (7th Cir.1984). The plaintiff's due diligence in attempting to discover the fraud is imperative. *Id.* If a debtor negligently fails to schedule an asset, "the bar of limitations should not begin to run until a plaintiff obtains knowledge or through due diligence should have obtained knowledge of the underlying fraud." *Schaefer v. First Nat. Bank of Lincolnwood*, 509 F.2d 1287, 1296 (7th Cir. 1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976) citing *Hochfelder v. Midwest Stock Exchange*, 503 F.2d 364, 375–376 (7th Cir.1974), *cert. denied*, 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974) (equitable tolling doctrine applied to claims based on negligence for violations of the Securities Exchange Act of 1934). Thus, "[t]he plaintiff ... has the burden of showing that he 'exercised reasonable care and diligence in seeking to learn the facts which would disclose fraud.'" *Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir.1974) citing *Morgan v. Koch*, 419 F.2d 993, 997 (7th Cir.1969).

In the instant case, the Trustee's complaint alleges that the transfers were made with the intent to hinder, delay, and defraud the Debtor's creditors. The complaint was filed within two years of the date that the Trustee concluded the second section 341 meeting of creditors. The Trustee argues that she has filed same diligently and timely after she learned the facts surrounding the transfers not initially disclosed by the Debtor. The critical fact, however, is that the Trustee learned of the voidable transfers in April 1989, when there was still approximately one year remaining under section 546(a) within which she could have filed the instant complaint. The Trustee did not thereafter timely file a protective complaint, but inexplicably waited approximately two years. This is not acting with the diligence required to properly invoke the equitable tolling doctrine. Thus, the above authorities do not support the Trustee's position because she was well aware of the transfers within the statutory period.

■ In the second type of fraudulent behavior, the statute of limitations is tolled if the fraud remained undisclosed because additional affirmative steps were taken after committing the fraud to keep it concealed. *Suslick*, 741 F.2d at 1004; *Teamsters Local 282 Pension Trust Fund v. Angelos*, 815 F.2d 452, 456 n. 4 (7th Cir. 1987). When active concealment exists, the statute is tolled until there is actual discovery of the fraud. *Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir.1975); *Schaefer v. First Nat. Bank of Lincolnwood*, 509 F.2d at 1296; *see also Hupp v. Gray*, 500 F.2d at 997. In such instance, the plaintiff is relieved from his obligation to use due diligence to discover the fraud. Fraudulent concealment must consist of affirmative acts or representations which are calculated to, and in fact do, prevent the discovery of the cause of action. Mere silence of the defendant and failure of the plaintiff to learn of the right of action, alone, are not sufficient. *See e.g., Curry v. A.H. Robins Co.*, 775 F.2d 212, 218 (7th Cir.1985). No allegations are contained in the Trustee's complaint which contend that Mary Lyons or the Debtor have taken any steps to

affirmatively conceal the alleged fraudulent conveyances. Thus, this line of authorities is inapplicable to the complaint at bar.

The doctrine of equitable tolling has been considered and, where appropriate, applied in several instances to toll the statute of limitations in bankruptcy adversary proceedings. *In re White v. Boston*, 104 B.R. 951, 957 (S.D.Ind.1989) (tolling doctrine considered in case reopening under section 350); *McGoldrick*, 117 B.R. at 559; *In re Butcher*, 72 B.R. 247, 250 (Bankr. E.D.Tenn.1987) (tolling applied where fraud concealed); *In re Butcher*, 67 B.R. 102, 103 (Bankr.E.D.Tenn.1986) (no basis for tolling section 546(a) where trustee does not allege concealment or continuing fraud); *In re Metzeler*, 66 B.R. 977, 981 (Bankr. S.D.N.Y.1986) (doctrine recognized, but tolling denied for lack of diligence in discovery of the fraud); *In re Friedman*, 15 B.R. 493, 494 (Bankr.N.D.Ill.1981) (decision pursuant to former Bankruptcy Act).

 In *White v. Boston*, 104 B.R. 951 (S.D.Ind.1989), Judge Barker stated the need for a trustee to prove some evidence of the fraud, as well as show the steps taken demonstrating a reasonable inquiry:

> Therefore, it is crucial that some evidence be adduced to demonstrate the likelihood of fraud, and that the bankruptcy judge make a finding on this issue. The trustee must bear the burden of adducing such evidence, as well as showing that he was reasonably diligent in seeking the facts that would have disclosed the concealment. *Cf. Teamsters Local 282*, 815 F.2d at 456. The standard by which to judge the adduced facts and circumstances should be flexible; it should succor duped trustees while also protecting insolvent debtors. (footnote omitted).

*Id.* at 957. For purposes of tolling the limitations period, the identity of the party responsible for concealing the fraud is not important—the crucial factor is whether property of the estate has been concealed. *See Butcher*, 72 B.R. at 250 n. 5.

 Equitable tolling is especially appropriate to toll the relevant statute of limitations in cases where the plaintiff is otherwise barred because, despite diligent inquiry, discovery of the cause of action occurred *after* the normal limitations period, or the defendant engaged in conduct constituting fraudulent concealment of the cause of action. Neither such scenario occurred here, hence the doctrine should not be applied. The Trustee learned of the transfers within the period prescribed by section 546(a) and has not alleged any fraudulent concealment of the cause of action by Mary Lyons. As Judge Eisen aptly noted in *Friedman*, "statutes of limitation are used to bar suits on stale or old claims and generally are strictly construed." 15 B.R. at 494.

## IV. CONCLUSION

The transfers were admittedly disclosed to the Trustee at the time of her appointment, which occurred within the first two years after the appointment of the first trustee in the case. Accordingly, the Court holds that the Trustee's complaint is time barred under section 546(a). For the foregoing reasons, the Court hereby allows the motion of Mary Lyons to dismiss.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.