**In re CVA ASSOCIATES and Central Valley Asphalt, Inc., Consolidated Debtors.**

**Duane GILLMAN, Trustee, Plaintiff/Appellee,**

v.

**MARK OAKES TRUCKING, Defendant/Appellant.**

**Civ. No. 94–C–357G.**

United States District Court, D. Utah, Central Division.

Aug. 29, 1994.

124

Stephen Homer, for appellant.

Leslie Randolph of McDowell and Gillman, for appellee.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

Appellant Mark Oakes Trucking appeals from a ruling by the District of Utah's Chief Bankruptcy Judge Glenn Clark which grant-

ed summary judgment in favor of the trustee/appellee. Appellant was represented by Stephen Homer and Appellee was represented by Leslie Randolph of McDowell and Gillman. After hearing oral argument, the matter was taken under advisement. Now being fully advised, this court issues the following Memorandum Decision and Order reversing the Order of the bankruptcy court.

## FACTS

This case arises from an adversary proceeding brought by the trustee against Mark Oakes Trucking ("appellant") pursuant to 11 U.S.C. 547 to recover a "preference" payment in the amount of $8,019.00 made by the Central Valley Asphalt, Inc. ("CVA") to appellant. The said payment of $8,019 was paid on December 12, 1989, by CVA to appellant for sand and gravel. The payment came a few weeks after appellant's attorney wrote to CVA threatening legal action unless payment was made by December 5, 1989.

Involuntary petitions were filed against CVA on January 26, 1990, forcing CVA into a Chapter 7 bankruptcy proceeding. Duane Gillman became the permanent trustee of the Chapter 7 case on March 3, 1990 [1]. On July 3, 1990, the cases were converted to a Chapter 11 proceeding. However, efforts to reorganize CVA proved unsuccessful, and the cases were reconverted to a Chapter 7 proceeding in May, 1991. As a result of the reconversion to Chapter 7, Mr. Gillman again became permanent trustee on July 8, 1991.

On February 8, 1994, the bankruptcy court granted summary judgment in this adversary proceeding in favor of the trustee, finding 1) that the trustee brought the adversary proceeding within the statute of limitations period allowed under 11 U.S.C. 546(a), and 2) that the payment to appellant was not immune from the provisions of § 547 because it was not made in the "ordinary course of business." Appellant challenges both rulings, but this court need not reach the second

---

1. Mr. Gillman previously had been interim trustee, and became permanent trustee by default under 11 U.S.C. § 341(a) due to the creditors' failure to elect a permanent trustee. Appellee states that Mr. Gillman became permanent trustee on March 3, 1990, whereas appellant lists March 15, 1990 as the operative date. The discrepancy is of no significance to the issues at bar.

issue because we here determine that the statute of limitations issue is dispositive.

## STANDARD OF REVIEW

On appeal, the bankruptcy court's findings of fact are upheld unless clearly erroneous, whereas the bankruptcy court's legal conclusions are reviewed de novo. *In re Meridith Hoffman Partners,* 12 F.3d 1549, 1554 (10th Cir.1993).

## ANALYSIS

■ The main issue presented in this appeal is whether the two year statute of limitations starts running upon appointment of the first trustee, or whether the two year period begins anew when a case is converted from one chapter of the Code to another and a new trustee is appointed. The distinction is critical because Mr. Gillman was first appointed trustee of the Chapter 7 case on March 3, 1990. After the case was converted to Chapter 11 and reconverted to Chapter 7, Mr. Gillman was reappointed trustee on July 8, 1991. Since Mr. Gillman brought the adversary proceeding on December 16, 1992, the adversary proceeding would be time barred by § 546(a) if the statute of limitations began running on March 3, 1990, as appellate contends. If, however, the limitations period began anew upon Mr. Gillman's reappointment on July 8, 1991, the adversary proceeding was brought within the permitted two year period.

11 U.S.C. 546(a) establishes a statute of limitations for preference actions brought under § 547. Section 546(a) provides as follows:

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the *appointment of a trustee* under section 702, 1104, 1163, 1302, or 1202 of this title; or

(2) the time the case is closed or dismissed. (Emphasis added.)

There is a split of authority as to when the statute of limitations begins to run under Section 546(a). Judge Clark, the chief bankruptcy judge in this district, has written an influential opinion holding that the limitations period is renewed when a case is converted from one chapter of the Code to another. *Stuart v. Pingree (In re Afco Develop. Corp.),* 65 B.R. 781 (Bankr.D.Utah 1986).[2] However, other courts, including the Ninth Circuit Court of Appeals, have held that the limitations period begins upon the appointment of the first trustee, regardless of subsequent conversions. *In re San Joaquin Roast Beef,* 7 F.3d 1413 (9th Cir.1993).[3]

■ The Tenth Circuit Court of Appeals has never resolved the matter directly. The closest it came to addressing the issue was in *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520 (10th Cir.1990). In *Zilkha,* the Tenth Circuit held that debtors-in-possession are treated as trustees for purposes of the statute of limitations set forth in § 546(a). How-

---

**2.** *See also Gillman v. Swire Pacific Holdings, Inc. (In re D–Mart Servs., Inc.),* 138 B.R. 985, 989 (Bankr.D.Utah 1992); *Hirsch v. Harper (In re Colonial Realty Co.),* 168 B.R. 512 (Bankr. D.Conn.1994); *McCuskey v. FBS Leasing Corp. (In re Rose Way, Inc.),* 160 B.R. 811, 813 (S.D.Iowa 1993); *Amazing Enters. v. Jobin (In re M & L Business Mach., Inc.),* 153 B.R. 308, 310–11 (Bankr.D.Colo.1993); *Martino v. Assco Assocs. Inc. (In re SSS Enters., Inc.),* 145 B.R. 915, 918 (Bankr.N.D.Ill.1992); *Nichols v. Wood (In re Wood),* 113 B.R. 253, 255–56 (Bankr.S.D.Miss. 1990); *Zeisler v. Connecticut Bank & Trust Co. (In re Grambling),* 85 B.R. 675, 677 (Bankr. D.Conn.1988); *Strell v. Weston (In re Sandra Cotton, Inc.),* 1989 WL 98851 (W.D.N.Y.1989); *Smith v. Moody (In re Moody),* 77 B.R. 566, 573–74 (S.D.Tex.1987).

**3.** *See also Clark Oil & Trading Co. v. Haberbush (In re Sahuaro Petroleum & Asphalt Co.),* 170 B.R. 689 (C.D.Cal.1994); *Liebersohn v. Rental Tools/Equipment (In re Nelson Co.),* 167 B.R. 1018, 1021 (Bankr.E.D.Pa.1994); *Grabscheid v. Denbo Iron and Metal, Inc. (In re Luria Steel and Trading Corp.),* 164 B.R. 293, 297 (Bankr.N.D.Ill. 1994); *Iron–Oak Supply Corp. v. Nibco (In re Iron–Oak Supply Corp.),* 162 B.R. 301, 306 (Bankr.E.D.Cal.1993); *Dumas v. Research Testing Lab, Inc. (In re EPI Products USA, Inc.),* 162 B.R. 1, 4–5 (Bankr.C.D.Cal.1993); *Strell v. Weston (In re Sandra Cotton, Inc.),* 92 B.R. 595, 597 (Bankr.W.D.N.Y.1988), rev'd. No. 88–1013E, 1989 WL 98851 (W.D.N.Y.1989); *cf. Steege v. Lyons (In re Lyons),* 130 B.R. 272, 277–78 (Bankr.N.D.Ill.1991).

ever, the court explicitly reserved the issue presented in the case at bar.[4]

### 1. Under the Plain Meaning of § 546(a), the Two Year Limitations Period Begins to Run Upon Appointment of the First Trustee

#### a. General Principles of Statutory Construction in Bankruptcy Cases

■ The Supreme Court has held that courts should interpret the Bankruptcy Code according to the statute's plain meaning, so long as the provision at issue is unambiguous. *United States v. Ron Pair Enters.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989). Where the language of the statute is sufficiently precise as to indicate congressional intent, there is no need to look behind the plain meaning of the statute. In such a case, the role of the courts is to enforce the statute according to its terms. *Id.*

■ Further, courts must presume that Congress says in a statute what it means, and means in a statute what it says. *Connecticut National Bank v. Germain*, —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). The text of the statute itself is the best evidence of congressional intent. *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98, 111 S.Ct. 1138, 1146, 113 L.Ed.2d 68 (1991). Where statutory language is not explicitly defined, courts should give words their common meaning. *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1859, 95 L.Ed.2d 404 (1987). Statutes should not be interpreted in such a way as to render them meaningless. *See Boise Cascade Corp. v. U.S.E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991).

■ Silence in a statute's legislative history cannot be controlling where a statute is unambiguous. *Dewsnup v. Timm*, 502 U.S. 410, 418–19, 112 S.Ct. 773, 779–80, 116 L.Ed.2d 903 (1992). However, where the Bankruptcy Code is ambiguous, the Supreme Court has been reluctant to effect major changes in pre-Code practice without some affirmative indication of congressional intent to make such changes. *Id.* Despite such reluctance, the Supreme Court has also noted that "it is not appropriate or realistic to expect Congress to have explained with particularity each step it took" in overhauling the bankruptcy laws. *Ron Pair Enters.*, 489 U.S. at 240, 109 S.Ct. at 1029.

#### b. Plain Meaning of § 546(a)

■ Appellant argues that § 546(a) states, in plain English, that the two year statute of limitation begins running upon the appointment of any trustee. In other words, appellant claims that when § 546(a) sets a two-year statute of limitations following the appointment of "a trustee," it is plainly referring to the first trustee in the case, and not to subsequent trustees who are appointed after a case is converted from one chapter of the Code to another. Several courts have so interpreted § 546(a), most notably the Ninth Circuit Court of Appeals in *In re San Joaquin Roast Beef, supra.* In *San Joaquin Roast Beef,* the Ninth Circuit Court evaluated the division among courts regarding the interpretation of "a trustee," and concluded that the language of § 546(a) is sufficiently clear to show that Congress intended the statute of limitations to begin running upon the appointment of the first trustee in the case without resorting to legislative history or policy arguments. The court acknowledged that credible policy arguments support both permissive and restrictive interpretations of "a trustee," but it stated:

> We decline to interpret section 546(a) to accommodate our views on whether a Chapter 7 trustee should be barred from exercising avoidance powers due to inaction by an earlier Chapter 11 trustee.... [T]he issue is laden with policy considerations best left to Congress.

A plain reading of section 546(a) is that the two-year statute of limitations begins running from the date the first trustee is appointed and that all subsequent trustees

---

**4.** We take no position on whether a subsequent appointment of a trustee in a chapter 11 cases would change the analysis. (citations omitted). While we perceive that to be a distin-guishable circumstance requiring a different analysis, we leave the issue for a case in which that situation arises.
*Zilkha* 920 F.2d at 1524 n. 11.

are subject to the same two-year statute of limitations.

7 F.3d at 1416.

Appellee urges a different analysis based on *Afco Develop. Corp., supra,* and its progeny. In *Afco,* the bankruptcy court implicitly found § 546(a) to be ambiguous. The court then analyzed the statute's legislative history, finding that Congress gave little explanation for adding § 546(a) to the new Bankruptcy Code. 65 B.R. at 784. Because many of the significant changes in the new Code generated extensive debate and legislative history, the bankruptcy court concluded that Congress' relative silence on § 546(a) indicates an intent by Congress to recodify existing law, and not to place a new limitation on trustee avoidance actions. In addition, the bankruptcy court determined that policy considerations weigh in favor of giving trustees a renewed statute of limitations when a bankrupt estate is converted from one chapter of the Code to another.

■ This court respectfully disagrees with Judge Clark's analysis in *Afco* and believes the Ninth Circuit's approach to be more appropriate as a matter of statutory interpretation. A plain reading of § 546(a) indicates that Congress intended to place a substantive time limitation on recovery actions following the appointment of *any* trustee. Although a trustee may be appointed under a variety of different Code sections, § 546(a) plainly states that once any trustee has been appointed, the two year limitations period begins to run. Because § 546(a) is susceptible of plain interpretation, it is unnecessary to venture into legislative history or policy debates in search of congressional intent. *Ron Pair Enters.,* 489 U.S. at 240, 109 S.Ct. at 1029. Accordingly, this court holds that § 546(a) imposes a two year statute of limitations on actions or proceedings specified thereunder, beginning when the first permanent trustee is appointed.

### 2. *The Same Result Would Follow From Legislative History and Policy Arguments*

Even if § 546(a) were deemed to be ambiguous, it appears to this court that neither legislative history nor public policy supports the conclusion that the statute of limitations begins anew each time a trustee is appointed under a new chapter of the Code.

### a. *Legislative History*

■ A shortage of legislative history helped to convince the *Afco* court that Congress envisioned § 546(a) as a restatement of pre-Code bankruptcy law. The bankruptcy court stressed that many of the significant bankruptcy reforms in the Code were enacted only after lengthy debate and, finding no such discussion surrounding § 546(a), determined that Congress must not have intended to create a new statute of limitations.

The Supreme Court noted in *Ron Pair Enters.* that Congress should not be expected to explain with particularity each step it took in enacting the Bankruptcy Code. What little legislative history there is, however, suggests that Congress intended to create a new statute of limitations in enacting Section 546(a). That section originated in Senate Bankruptcy Reform Bill (S. 2266). Although the Senate report referred to the statute of limitations only briefly, it made the following comment:

> Subsection (c) [later renumbered as subsection (a) ] *adds* a statute of limitations to the use by the trustee of the avoiding powers. The limitation is two years after his appointment, or the time the case is closed or dismissed, whichever occurs later.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 87 (1978), *reprinted in,* 1978 U.S.Code Cong. & Admin.News, pp. 5787, 5873 (emphasis added).

Nowhere does the Senate report indicate that § 546 was merely codifying existing law with respect to the statute of limitations. Instead, the report states that the Senate was *adding* a statute of limitations, which strongly suggests that the Senate intended to create a statute of limitations that had not previously existed. This court is of the view that the legislative history of § 546(a) implies that Congress was adding to, rather than codifying, pre-Code bankruptcy law.

b. *Public Policy*

██ This court is similarly unpersuaded by appellee's argument that public policy supports the running of the statute of limitations anew whenever a case in converted from one chapter to another.

Courts that have so interpreted § 546(a) emphasize that trustees have different objectives under Chapters 7, 11, and 13. For example, a Chapter 11 trustee may opt against bringing a recovery action in the interest of rehabilitating a financially distressed business. By contrast, a Chapter 7 trustee seeks to maximize the value of the debtor's estate. It is possible, therefore, that the Chapter 11 trustee's decision not to recover voidable transfers could eventually undermine a Chapter 7 trustee's ability to maximize the debtor's estate. Accordingly, the argument runs, each trustee appointed after a conversion should have a renewed 2-year period within which to carry out his objectives.

██ Notwithstanding the foregoing persuasive argument, this court views the protection of creditors from defending against stale claims as a stronger policy argument. As numerous courts have noted, the focus of statutes of limitations is to protect defendants—not to provide a clean slate for trustees to bring old claims. *See e.g. Grabscheid v. Denbo Iron and Metal, Inc. (In re Luria Steel and Trading Corp.)*, 164 B.R. 293, 296 (Bankr.N.D.Ill.1994); *Liebersohn v. Rental Tools/Equipment (In re Nelson Co.)*, 167 B.R. 1018, 1027–28 (Bankr.E.D.Pa.1994). A trustee who sits on his rights under one chapter of the Code should not be allowed to convert the case to another chapter in order to bring stale actions. Under such a rule, conversion from one chapter to another could revive dead claims and force creditors— many of whom are guilty of no wrongdoing— to endure continued exposure well beyond the two year period envisioned by Congress. Such an approach would not be in the public interest.

3. *The Same Result Follows Even When the Same Person is Named as Trustee in the Initial and Converted Proceeding*

██ As an alternative theory, appellee suggests that where a person is appointed trustee, and then, after a conversion or other proceeding in which the initial trustee was not so appointed, the same person is reappointed as trustee, the two-year statute of limitations should be tolled during any period in which that person was not acting as trustee. In other words, appellee suggests that courts should add up or "tack" the number of days a particular trustee has acted in that capacity, and disregard any time period in which the estate had a different trustee or no trustee. In the case at bar, such an approach would place the trustee's recovery action within the two year limitations period because Mr. Gillman's combined tenure as Chapter 7 trustee amounts to less than two years.[5] Thus, if the court were to ignore the time period during which the case was converted to Chapter 11 in which Mr. Gillman was not acting as trustee, the Adversary Proceeding would not be time barred—even if the statute of limitations did not begin anew when the case was converted from one chapter of the Code to another.

Appellee's argument is unpersuasive. Followed to its logical conclusion, the tacking approach would render the statute of limitations unworkable. For instance, if a trustee first appointed were to resign, all ensuing time would be excluded on the happenstance or purposeful intendment of the original trustee being re-appointed.

Nothing in the statute suggests that the limitations period is tolled when a specific person is not acting as trustee, or that the statute of limitations is personal to individual trustees. Such an approach would render the statute of limitations arbitrary and unpredictable. This court has no hesitation in concluding that Congress intended no such result.

This court holds that 11 U.S.C. § 546(a) unambiguously imposes a two year statute of limitations on trustee avoidance actions fol-

---

**5.** Mr. Gillman's initial appointed as permanent trustee ran from March 3, 1990 until July 3, 1990. He was then reappointed on July 8, 1991, roughly seventeen months before the Adversary Proceeding was filed. The total of the two periods was about twenty-one months.

lowing the appointment of the first trustee in the case. Consequently, there is no need to look beyond the plain meaning of the statute for congressional intent. Moreover, even if § 546(a) were deemed to be ambiguous, this court considers that neither the legislative history of the statute nor public policy would justify a rule establishing a renewed statute of limitations whenever a case is converted from one chapter of the Code to another. The fact that the same person initially appointed might be reappointed as trustee would not change these conclusions.

Based on the foregoing, it is

**ORDERED,** that the pending adversary proceeding is dismissed as time barred because appellee brought this recovery action more than two years after the initial appointment of a permanent trustee.