**In re John Eugene CHAVEZ, et al., Debtors.**

**Joan Marie SLOAN, Appellant,**

**v.**

**Albert HOFFMAN, Trustee, Appellee.**

Civ. A. No. 92–K–1196.
Bankruptcy No. 91–20897 DEC.

United States District Court,
D. Colorado.

July 9, 1993.

J. Greg Whitehair, Denver, CO, for appellant.

Bruce C. Bernstein, Denver, CO, for appellee.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The narrow issue before me in this appeal is whether the bankruptcy court abused its discretion in awarding the trustee and his attorney compensation under 11 U.S.C. § 330. Debtor Joan Marie Sloan argues that the trustee and his attorney should be denied any fees in this case because their services were of no benefit to the estate. I affirm the bankruptcy court's judgment.

## I. *Facts.*

Debtors John Chavez and his wife, Joan Sloan, filed for Chapter 7 bankruptcy protection on August 13, 1991. They listed secured and unsecured debts totalling $17,-465. Chavez and Sloan were represented in the bankruptcy proceeding by Attorney William Walsh. Albert Hoffman ("Trustee") was appointed trustee. The Debtors' initial filings showed this to be a no-asset case.

On September 1, 1991, Chavez was killed in a car accident. Sloan was the beneficiary of two life insurance policies, payable in the aggregate amount of $102,000 on Chavez' death. Sloan met with her attorney on September 12, 1991, told him about the policies and requested he file a motion to dismiss the bankruptcy proceedings, since the proceeds would be sufficient to pay off the couple's debts. Walsh allegedly agreed to file the motion, but then never did.

Sloan was scheduled to appear at the first meeting of creditors on September 26, 1991. She telephoned Walsh that morning to tell him she could not appear because of an emergency at work and requested he reschedule the meeting. The meeting was reset to October 24, 1991. Sloan missed this meeting, as well, because Walsh allegedly failed to contact her at her new address.

Sloan's failure to appear at the creditors' meeting led the Trustee to move for the appointment of counsel and for an extension of time to object to Sloan's discharge. In addition, on November 12, 1991, the Trustee moved for a Rule 2004 examination of the Colorado Barricade Company, Chavez' former employer, seeking information about the life insurance policies. The court granted these motions. At the Rule 2004 examination, the Trustee learned that Sloan had received $52,000 in proceeds from one of the policies and had written a check to reimburse Colorado Barricade for funeral expenses it had advanced.[1]

---

**1.** Although Sloan stopped payment on the check, this was not revealed in the Rule 2004 hearing.

On November 18, 1991, Sloan, acting pro se, moved to dismiss her case. In this motion, Sloan identified the two life insurance policies of which she was the beneficiary and stated that she wished to pay off the couple's creditors in full. She further notified the court that she had terminated the services of Walsh because he had failed to obey her instruction to file a motion to dismiss. On November 29, 1991, Sloan mailed to the court $30,000 of the proceeds from the insurance policies, though Walsh had instructed her to forward the funds directly to the Trustee. (She was authorized to retain the remaining funds.) The Trustee received the funds on December 2, 1991.

The Trustee objected to Sloan's motion to dismiss the case on December 10, 1991 and requested a hearing. Despite the Trustee's objection, the court granted the motion, but later vacated its order upon learning that the Trustee had not received adequate notice. On January 28, 1992, the court held a hearing on the Trustee's objection to the motion. In the hearing, Sloan testified that she had paid her creditors in full. The Trustee noted, however, that he had not received any evidence of payment from Sloan, despite two written requests for this information. After the hearing was recessed to permit Sloan to provide the Trustee with evidence of payment of her creditors, the court entered an order dismissing the case, subject to the payment of the Trustee's administrative expenses.

Shortly thereafter, the Trustee and his attorney filed their motions for final compensation under 11 U.S.C. § 330. The Trustee requested fees totalling $605 and expenses of $99. His attorney requested fees of $1959 and expenses of $96. Sloan objected to both motions, claiming that the Trustee and his attorney's services were of no benefit to the estate. After a hearing on the objection, the court granted both motions, reducing the amounts requested slightly. It found that

> [t]he dispute in this case is substantially the result of poor legal advice given to Debtor Sloan, poor lay advice given to Debtor Sloan, and Debtor Sloan's lack of understanding of her obligations once she filed her petition. However, this does not warrant denial of the pending Motions for the Trustee and his counsel.
>
> The services rendered to the estate by the Trustee and his attorney, Bruce C. Bernstein, P.C., were reasonable, necessary and benefitted the estate. The Trustee properly discharged his duties and counsel for him properly represented the estate.

(R.Doc. 75 at 1.) Sloan now appeals this order.

## II. *Merits.*

. ▌ In her opening brief, Sloan lists four issues on appeal. Of these, only two merit my consideration: whether the court abused its discretion in awarding fees to the Trustee and his counsel and whether the court erred in permitting the Trustee to retain estate funds to cover his attorney fees in this appeal.[2] The bankruptcy court's award of fees under § 330 is reviewed for an abuse of discretion. *See SEC v. American Principals Holding, Inc. (In re San Vincente Medical Partners, Ltd.),* 962 F.2d 1402, 1409 (9th Cir. 1992); *Boldt v. Crake (In re Riverside–Linden Inv. Co.),* 945 F.2d 320, 322 (9th Cir.1991). Its findings of fact are not reversible unless clearly erroneous. Bankr.R. 8013.

▌ Sloan argues that the bankruptcy court abused its discretion in awarding fees to the Trustee and his counsel because their services were unnecessary and were of no benefit to the estate. Specifically, she claims that the record demonstrates that the Trustee knew of the insurance

---

**2.** The remaining issues, whether the Trustee should have been permitted to retain estate funds in a non-interest bearing account and whether Sloan "may suffer bankruptcy without being granted relief" are misdirected. The record reveals that the Trustee placed estate funds in an interest bearing account and paid Sloan interest on the amounts finally disbursed to her. (*See* R.Doc. gg.) Furthermore, Sloan did not "suffer" bankruptcy; her case was dismissed when she produced evidence that she had paid her creditors in full. She did not appeal that order.

policies as of September 4, 1991 but did not take action to dismiss the case because he wished to collect a fee. (Appellant's Br. at 17–19.) She further asserts that the Trustee is not entitled to a fee because he failed to collect or distribute any assets of the estate. (*See id.* at 26.) Neither contention is correct.

The fundamental flaw in Sloan's reasoning is that she imputes to the Trustee knowledge he did not have. While Sloan's attorney informed the Trustee on September 4 of the "possibility of life insurance," (R.Vol. II at 10), this is far from conclusive proof that there were insurance proceeds immediately payable to Sloan which would cover the couple's debts in full. Sloan twice did not appear at the scheduled creditors' meeting to answer questions about these funds. Despite Trustee's numerous attempts over the next several weeks to obtain more detailed information from Sloan or Colorado Barricade, the Trustee was forced to conduct a Rule 2004 examination of the company. There he learned that some of the funds were possibly being dissipated. Although it later became clear that Sloan stopped payment on the check, this was not revealed to the Trustee until well after the examination. Likewise, it was not until the hearing on the Trustee's objection to Sloan's motion to dismiss that Sloan provided him with written documentation that she had made payment in full to her creditors.

Thus, contrary to Sloan's view of the facts, the Trustee did not have sufficient information about the insurance proceeds upon which he could have sought dismissal of the case at an earlier date. Further, that Sloan made ex post facto explanations for her failure at each critical point to provide information to the Trustee is irrelevant. This case must be viewed from the perspective of the Trustee who, lacking clear information on the status of the insurance proceeds, was trying to marshal this asset of the estate and prevent its dissipation. *See In re Melenyzer,* 140 B.R. 143, 155 (Bankr.W.D.Tex.1992) (trustee's administration of case should be evaluated "in light of the information that was, or reasonably should have been, available to him or her at the time"). While Sloan may have thought that her actions at the time were reasonable, without communicating any information to the Trustee, she cannot expect him to have acted differently. For these reasons, I conclude that the bankruptcy court did not err in finding that the Trustee and his counsel diligently carried out their duties, especially in light of Sloan's rather frequent intransigence.[3]

■ Furthermore, the court carefully reviewed the amounts requested in both fee petitions, making reductions where warranted. It did not abuse its discretion in permitting the Trustee to retain funds to recover his costs on appeal. *See Nunley v. Jessee,* 92 B.R. 152 (W.D.Va.1988); *In re Great Sweats, Inc.,* 113 B.R. 240, 246 (Bankr.E.D.Va.1990). Otherwise, the Trustee's compensation for his services would be diluted or dissipated, and he would have effectively financed the litigation. *See In re Hers Cosmetics Corp.,* 114 B.R. 240, 243–44 (Bankr.C.D.Cal.1990). Accordingly,

IT IS ORDERED THAT the bankruptcy court's judgment is AFFIRMED.

---

**3.** Sloan also argues that the Trustee's actions contravened the procedures outlined in the Handbook for Chapter 7 Trustees. She has provided the court with copies of both the 1988 and 1992 handbooks and requests that I take judicial notice of their contents. I grant this request, but find that these materials have little effect on the outcome of this appeal.

First, the handbook is simply "a statement of operational policy ... only intended as a working guide for panel trustees under United States Trustee supervision." Executive Office for United States Trustees, *Handbook for Chapter 7*

*Trustees* at i (1992). Second, it is not binding on the court. *See In re Kincaid,* 146 B.R. 387, 389 (Bankr.W.D.Tenn.1992). Third, even if it can be construed as providing some guidance as to the performance standards to which Chapter 7 trustees should adhere, there is no indication that the Trustee's actions in this case fell below those standards. *See In re Melenyzer,* 140 B.R. at 156 (trustee bears liability for assets he fails to bring into estate; trustee would have failed his statutory duties by not seeking to recover concealed assets which transformed no asset estate to solvent estate).