**In re William DEC, Debtor.**

**Glenn R. Heyman, not individually but as trustee of the bankruptcy estate of William E. Dec, Debtor, Plaintiff,**

v.

**William Dec, Francis Ward Allred, Celia Dec and American National Bank and Trust Company of Chicago as Trustee U/T No. 10861300, Defendants.**

**Bankruptcy No. 91 B 20756.**
**Adversary No. 99 A 01214.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Sept. 6, 2001.

See also 2000 WL 1346685.

David K. Welch, Dannen, Crane, Heyman & Simon, Chicago, IL, for plaintiff.

Marco Riley, Hinshaw & Culbertson, Keevan Morgan, Morgan and Bley, William R. Klein, Young, Rosen, Dolgin & Finkel, Ltd., Chicago, IL, for defendants.

## MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

This matter is before the Court on the motion for summary judgment of Defendant Francis Ward Allred ("Allred"). Both Plaintiff/Trustee Glenn R. Heyman (the "Trustee") and Defendant Celia Dec ("Celia") have filed responses to the motion. For the reasons set forth below, the motion is denied.

## BACKGROUND

This adversary proceeding was filed in the reopened bankruptcy case of Debtor William Dec (the "Debtor"). The bankruptcy case commenced on October 1, 1991, when the Debtor filed a *pro se* voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code"). The Debtor received a discharge on October 29, 1992, and the case was closed approximately six years later, on August 13, 1998. On June 10, 1999, Allred moved to reopen the case, alleging that "the above captioned case should be reopened because the debtor failed to schedule a significant asset, which was never administered by the trustee." The case was reopened and the Trustee was reappointed on June 11, 1999.

There were several unusual aspects to Allred's motion to reopen the case. Most notably, Allred alleged a fraudulent scheme in which he appeared to have been a participant. Allred is a creditor of the Debtor's estate, but his claim is so small in relation to those of other creditors that the Trustee's recovery of additional assets would be unlikely to bring any significant benefit to him.[1]

In his motion to reopen, Allred stated that in June 1989, the Debtor sold him valuable real estate located at 632 W. Deming Place, Chicago, Illinois (the "Property") for a price of $600,000. Allred added that in connection with the sale, Celia,

---

1. In his schedules, the Debtor included a debt of $4,500 owed Allred for unpaid rent. In all, the Debtor scheduled claims totaling approximately $287,000,000, although allowed claims were ultimately reduced to approximately $3,800,000.

who was then married to the Debtor, received a nine-year option to repurchase the Property for $600,000 plus a twelve percent return on "any net investment" over $600,000. Allred further stated that Celia had contemporaneously assigned the option to the Debtor. Finally, Allred alleged that although the Debtor would have owned the option at the time he filed his bankruptcy petition, he had "concealed this valuable asset from the trustee by not scheduling the same, by dealing with it in his [1995] divorce as if the bankruptcy estate had no interest in said option and by waiting until the conclusion of the bankruptcy case to pursue the alleged option." Allred concluded his motion by offering to purchase the Trustee's interest in the option for the sum of $75,000, so as to facilitate resolution of a lawsuit to enforce the option that Celia had filed in the Circuit Court of Cook County, Illinois (the "State Court"). In the State Court lawsuit, Celia took the position that she could enforce rights under the option because the Debtor had given it back to her, arguably rescinding the assignment to him.

The motion to reopen was internally inconsistent in that Allred alleged that the option was valuable, yet referred to it as the "nebulous and alleged option," suggesting that it had no value. The motion was also somewhat vague as to Allred's position in the State Court. Allred stated that "[f]or numerous reasons, including, but not limited to, the uncertain price set forth in the option . . .," he had refused to recognize Celia's attempt to exercise it.

Allred acknowledged that reopening the bankruptcy case would have the effect of staying the litigation in the State Court, where the case was set for trial. Later, it would be revealed that at the time Allred moved to reopen the bankruptcy case, he

had doubts as to the likelihood that he would prevail in the State Court.

Allred did not suggest in his motion that the sale of the Property to him might have been for less than the Property's value. Rather, his focus was on whatever option rights the estate might own.

After being reappointed, the Trustee brought this adversary proceeding to avoid the Debtor's transfer of the Property to Allred. Both the Trustee's original and amended complaints contain a cause of action to recover the Property through the exercise of Celia's alleged option, but the Trustee's principal objective is recovery of the Property directly from Allred. Allred states that he did not foresee that the Trustee would seek to recover the Property instead of accepting his offer to pay the estate $75,000 for the option.

To date, there have been two substantive motions brought in this suit, one challenging the Trustee's right to recover the Property, and the other involving the Trustee's option rights. First, soon after the Trustee filed his complaint, Defendants moved to dismiss those counts brought under a fraudulent transfer theory. The defense raised was that the counts were time-barred. Since the Debtor sold the Property to Allred more than a year before he filed his bankruptcy petition, the Court granted the motion to dismiss with respect to those counts under Code § 548. At the same time, the Court denied the motion to dismiss with respect to those counts under the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 160/1 *et seq.* The Trustee brought those causes of action in the exercise of his avoidance powers under Code § 544(b), and as such, the counts were subject to the statute of limitations under Code § 546(a).[2]

---

2. Code § 546(a) provides that "[a]n action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

Explaining its ruling, the Court stated that equitable tolling might be appropriate because there was nothing in the complaint indicating that a lack of diligence on the part of the Trustee was the reason for the belated discovery of the alleged fraudulent transfer.

The second substantive motion was the Trustee's motion to strike portions of Allred's answer and affirmative defenses. In his answer to the complaint, Allred raised the affirmative defense that his signature had been forged on the Option Agreement[3] that Celia sought to enforce in the State Court. Allred's assertion of the forgery defense represented something of a change in position, since Allred had attached a copy of the Option Agreement to his motion to reopen the bankruptcy case, and he had described the option as a valuable asset of the estate. When the Trustee moved to strike, Allred attested that he had not learned of any alleged option until Celia sought to enforce the Option Agreement in May 1998. Allred stated that although he recalled signing a different agreement that would have given the Debtor a seven-year option to repurchase the Property, the proposed agreement was marked up with further changes, and it never resurfaced. Allred denied that Celia was to have option rights with respect to the Property, and he stated that he was unaware that Celia had assigned any option rights to the Debtor.

Briefing on the Trustee's motion to strike revealed that Allred had initially asserted a forgery defense in the State Court. However, one or more handwriting experts had apparently concluded that the signature on the Option Agreement was in his handwriting. Shortly before trial in the State Court litigation, Allred had moved to amend his answer to switch to a defense that he had been deceived into signing the Option Agreement. Although the State Court denied Celia's motion to strike Allred's amended answer, thereby allowing his defense that he had been deceived into signing the Option Agreement, Allred still wished to avoid trial. His solution had been to move to reopen the bankruptcy case, and to assemble new evidence supporting the forgery defense in the time after the automatic stay under Code § 362(a) went into effect.

The critical factor in this Court's ruling denying the motion to strike was the fact that Celia's suit had not gone to trial in the State Court. Despite obvious maneuvering on Allred's part, there had been no fraud on the judicial system, and the Debtor's estate had conceivably benefitted from Allred's strategy. Mindful of its truth-finding function, the Court concluded that Allred was not judicially estopped from asserting a forgery defense in this Court. Having considered all the arguments asserted in the Trustee's motion to strike, the Court rejected all grounds for striking Allred's forgery defense except equitable estoppel.

(1) the later of—
 (A) 2 years after the entry of the order for relief; or
 (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed."

11 U.S.C. § 546(a). Because the Debtor's bankruptcy case was not closed until August 1998, the statute of limitations under Code § 546(a) would have terminated in 1993, two years after the Trustee's appointment.

3. Celia asserts rights to the Property under a single-page document that recited that she would have the right to purchase the Property at anytime for a period of nine years after June 24, 1989 (the "Option Agreement").

The Trustee's argument to support application of equitable estoppel is that when he made the decision to bring this adversary proceeding, he reasonably relied on Allred's representations concerning the authenticity of the option. According to the Trustee, by relying on Allred's representations, he incurred legal fees and expenses that may never be recovered. As yet, there has been no decision in this case on the merits of the Trustee's equitable estoppel argument.

The key factual issues in this suit can be divided into two groups. First, there is the question whether the Debtor sold the Property to Allred at a price far below the Property's value. The Trustee has evidence that the Property was sold below its market price, but Allred, a real estate broker, argues that a reasonable price was paid. The second group of issues are four factual questions bearing on option rights. These issues are: (1) whether Allred signed the Option Agreement (designated Option # 1 in the Trustee's amended complaint), as the Trustee and Celia contend; (2) whether Allred instead signed a multipage document that would have given the Debtor a seven-year option to repurchase the Property (designated Option # 2 in the Trustee's amended complaint), as Allred contends; (3) whether Celia assigned her rights under the Option Agreement to the Debtor via a written instrument (the "Assignment Agreement") executed the same day as the Option Agreement; and (4) whether the Assignment Agreement was later rescinded. Because credibility determinations will be needed to determine these factual issues, they cannot be decided without a trial.

Two facts are not disputed on this motion. These are: (1) that the Trustee did not actually learn of the sale of the Property until Allred moved to reopen the Debtor's bankruptcy case; and (2) that the Trustee promptly brought this adversary proceeding upon learning of the transfer.

## DISCUSSION

In his motion for summary judgment, Allred focuses on several of his affirmative defenses. First, to defeat the Trustee's causes of action to avoid the transfer of the Property to him, Allred asserts that as a matter of law and undisputed fact, the claims are time-barred. Allred's also seeks a judgment on several affirmative defenses going to the question whether the Trustee may exercise Celia's or the Debtor's option to repurchase the Property. The Trustee counters that Allred is equitably estopped from asserting those defenses.

### Question Whether Causes of Action to Recover the Property Are Time Barred

■■■ It is undisputed that the Trustee's causes of action under Code § 544(b) are brought beyond the two-year statute of limitations under Code § 546(a). However, as the Court observed earlier in the decision on Defendants' motions to dismiss, equitable tolling may be applied with respect to causes of action brought under § 546(a). *Jobin v. Boryla (In re M & L Business Machine Co., Inc.)*, 75 F.3d 586, 591 (10th Cir.1996); *Ernst & Young v. Matsumoto (In re United Insurance Management, Inc.)*, 14 F.3d 1380, 1385 (9th Cir.1994). Under that doctrine, a plaintiff may avoid the bar of a statute of limitations if despite all due diligence on its part, it is unable to obtain vital information bearing on the existence of its claim. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991).

■■■ Equitable tolling is appropriate in two types of cases. In one scenario, the statute of limitations is tolled if the fraud

remained undisclosed because the defendant took additional affirmative steps to conceal it after committing the fraud to keep it concealed. *See Steege v. Lyons (In re Lyons)*, 130 B.R. 272, 280 (Bankr. N.D.Ill.1991). When there is active concealment, the statute is tolled until there is actual discovery of the fraud,[4] and the plaintiff is relieved from its obligation to use due diligence to discover the fraud. *Id. See also Brandt v. Gerardo (In re Gerardo Leasing, Inc.)*, 173 B.R. 379, 392 (Bankr.N.D.Ill.1994).

The statute of limitations under Code § 546(a) may also be tolled where the fraud goes undiscovered even though the defendant does nothing to conceal it. *See Lyons*, 130 B.R. at 280. As an example, if a debtor negligently facilitated fraud by simply failing to schedule assets, tolling would last until the fraud reasonably could have been discovered by a trustee exercising due care. *White v. Boston (In re White)*, 104 B.R. 951, 956 (S.D.Ind.1989).

On his motion for summary judgment, Allred argues that neither form of equitable tolling may be applied here.

*Standard on Summary Judgment*

The well-established standard on a motion under Fed.R.Civ.P. 56(c) and Fed. R. Bankr.P. 7056 is that summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *E.g., Bellaver v. Quanex Corp.*, 200 F.3d 485, 491 (7th Cir.2000); *Feldman v. American Memorial Life Ins. Co.*, 196 F.3d 783, 789 (7th Cir.1999). In ruling on the motion, the court reviews the record in the light most favorable to the nonmoving party and it draws all reasonable inferences therefrom in the nonmovant's favor. *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir.2000); *Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390, 395 (7th Cir.1999).

The task on a motion for summary judgment is to determine whether there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir.1996), *cert. denied*, 519 U.S. 1115, 117 S.Ct. 957, 136 L.Ed.2d 843 (1997); *Waukesha Foundry, Inc. v. Industrial Engineering, Inc.*, 91 F.3d 1002, 1007 (7th Cir.1996). On such a motion, it is not the court's function to resolve factual disputes or to weigh conflicting evidence. *Id.* Summary judgment is appropriate when there is only one logical conclusion that the fact finder can reach. *Marozsan v. United States*, 90 F.3d 1284, 1290 (7th Cir.1996), *cert. denied*, 520 U.S. 1109, 117 S.Ct. 1117, 137 L.Ed.2d 317 (1997).

Where the party seeking summary judgment is the party bearing the burden of proof at trial, the standard is more stringent. *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir.1992). In that scenario, the movant bears the burden of establishing a prima facie case that would entitle it to a directed verdict if the issue was uncontested at trial. *Orozco v. County of Yolo*, 814 F.Supp. 885, 890 (E.D.Cal.1993). To prevail on a summary judgment motion based on an affirmative defense, then, a defendant ordinarily must adduce evidence supporting each element of its affirmative de-

---

4. Arguably the principle applied would be more accurately labeled a discovery rule, rather than equitable tolling, since the statute of limitations would not have begun to run until discovery of the cause of action. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991).

fense, and the evidence must be such that no reasonable jury would disbelieve it. *Herndon v. Massachusetts General Life Ins. Co.,* 28 F.Supp.2d 379, 382 (W.D.Va. 1998).

 The procedural context is somewhat different here, since it is undisputed that this action is brought beyond the two-year statute of limitations under Code § 546(a). Thus, the requirements under Code § 546(a) are met. That being so, the question is whether the Trustee can establish a bar to Allred's defense. Since the Trustee bears the burden of persuasion on that question of equitable tolling, he must present sufficient evidence to show the existence of each element on which he will bear the burden of proof at trial. *See Filipovic,* 176 F.3d at 395. Allred may prevail if he can demonstrate that the Trustee will be unable to produce any evidence at trial supporting an essential element of his equitable tolling defense. *See Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 979 (7th Cir.1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

### Question whether fraud was actually concealed

The Trustee's argument concerning actual concealment is that the fraud was concealed because he was not told of the option or provided details concerning the sale of the Property. Responding, Allred argues that there must be affirmative acts of concealment before there can be equitable tolling. Otherwise, the statute of limi-

tations for bringing fraudulent transfer actions would become a nullity, since parties to a scheme such as the one alleged here will not admit the fraudulent nature of the transaction. Based on the premise that he is accused only of an omission-having to failed to disclose the Debtor's interest in the Property,[5] Allred sees himself in the position of a defendant innocent of wrongdoing who would be deprived of the protection that statutes of limitations are intended to provide.

 This Court disagrees that lack of affirmative action on Allred's part precludes application of equitable tolling. At least one decision finds that where a bankruptcy trustee brings an untimely fraudulent transfer action against a third party, the inquiry into whether there has been actual concealment will focus on the actions of the debtor-transferor, rather than those of the defendant-transferee. *See Moratzka v. Pomaville (In re Pomaville),* 190 B.R. 632, 637 (Bankr.D.Minn.1995). *See also Gennet v. Docktor (In re Levy),* 185 B.R. 378, 385–86 (Bankr.S.D.Fla.1995) (focusing on debtor's omission of information on schedules, despite defendant's protest that she had no role in preparation of schedules) To so structure the inquiry is consistent with the rule that complete financial disclosure is a condition precedent to the privilege of discharge. *Peterson v. Scott (In re Scott),* 172 F.3d 959, 967 (7th Cir.1999). *See also In re Famisaran,* 224 B.R. 886, 891 (Bankr.N.D.Ill.1998) (debtors may be denied discharge for failure to fully and accurately answer all questions in

---

**5.** The Trustee contends that under Code § 542, Allred and Celia had the duty to turn over to the estate whatever interest the Debtor had in the option to repurchase the Property. Importantly, though, the existence of such a duty would turn on whether there was in fact an option, a factual question which cannot be determined on this motion for summary judgment.

Although the Trustee also complains that neither Allred nor Celia informed him that the Property had been transferred, he cites no Code section that would impose such an obligation. Absent a statutory requirement that they do so, it cannot be said the Allred or Celia actively concealed through failure to comply with obligations imposed on them under the Code.

their bankruptcy filings); *In re Senese,* 245 B.R. 565, 575 (Bankr.N.D.Ill.2000) (same).[6] Not infrequently, a debtor's dereliction of its duty to disclose would not be uncovered but for efforts of its creditors. *See, e.g., Famisaran,* 224 B.R. at 895. Here, Allred did not provide such information until his motion to reopen the case.

Addressing the fact that a defendant in an adversary proceeding to avoid a fraudulent transfer may not have taken steps to actively conceal the cause of action, *Pomaville* provides the following explanation as to the balancing of interests that takes place:

> A bankruptcy case presents a rather different slant on equitable tolling. In the typical situation, it is the debtor's conduct rather than the defendant's conduct which invokes equitable tolling. In some senses, this is unfair to the defendant. On the other hand, unlike the usual civil case where a plaintiff at least has the advantage of being a party to the underlying transaction, a bankruptcy trustee must rely almost entirely on a third party (the debtor) to provide the information necessary to uncover avoidable transfers.

*Pomaville,* 190 B.R. at 637. *Pomaville* further concluded that the debtor's omission of information on his sworn bankruptcy schedules and statements was a positive step to deliberately conceal a fraudulent transfer. *Id.* at 637.

 Here, because the transfer of the Property took place more than a year before the Debtor's bankruptcy filing, the Debtor was not required to disclose it on his statement of financial affairs. On the other hand, disclosure of the option would have led to discovery of a cause of action to recover the Property. If the evidence at trial establishes that the option existed, the Debtor's failure to include it in his bankruptcy schedules would be an affirmative act of concealment that would support equitable tolling of the statute of limitations under Code § 546(a).

### Questions whether fraud was not concealed and whether Trustee exercised due diligence in discovering the fraud

 Where a fraud has not been concealed, "[t]he plaintiff's due diligence in attempting to discover the fraud is imperative." *Lyons,* 130 B.R. at 280. In the context of a fraudulent transfer action brought by a bankruptcy trustee, the trustee will have the burden of showing that reasonable care and due diligence were exercised in seeking to learn facts which would disclose the debtor's fraud. *Pomaville,* 190 B.R. at 637. Because an objective test is used to determine the extent to which a plaintiff used reasonable diligence, summary judgment may be granted if the uncontroverted evidence irrefutably demonstrates that the plaintiff discovered or should have discovered the fraud but failed to file a timely complaint. *United Insurance Management, Inc.,* 14 F.3d at 1386. Here, Allred argues that the Trustee should have discovered the possibility of an avoidance action because he had both actual and constructive knowledge that the Property had been sold.

To support his contention that the Trustee had actual notice of relevant facts, Allred points out that shortly after his appointment, the Trustee was told by employees of the Office of the United States

---

**6.** Along this same line of thought, a trustee's technical abandonment of an asset may be revoked if the debtor provided incomplete or false information, precluding a proper investigation of the asset. *See, e.g., Spear v. Schafler (In re Schafler),* 263 B.R. 296, 305 (N.D.Cal. 2001); *In re Ozer,* 208 B.R. 630, 633 (Bankr. E.D.N.Y.1997). In that scenario, the debtor's failure to disclose excuses the trustee's error in prematurely abandoning the property.

Trustee and of the Resolution Trust Corporation that the Debtor had sold a large home on Deming Place within the year preceding his bankruptcy filing. The Trustee admits that he was told that an individual named Larry Starkman had purchased the home within that period, and that the value of the home was about a million dollars.

Allred also contends that the Trustee had constructive notice of the transfer because records in the office of the Cook County Recorder of Deeds would have shown that the Debtor had owned the Property. Describing the search that would follow, Allred maintains that by issuing a subpoena to the land trust that had held title to the Property, the Trustee could have learned of the conveyance to Allred. Alternatively, by using the real estate parcel identification number, the Trustee could have found that Allred's land trust held title to the Property. Allred concludes that "a subpoena to Allred's trustee would have told the rest of the story."

Besides noting that public records were not checked, Allred points to statements in two other documents that, in his view, would have alerted the Trustee to the need for further investigation into the Debtor's affairs. The first document, entitled "First Addendum to Bankruptcy Filing," contained a "note or reservation" to the Trustee or to the presiding Bankruptcy Judge. In that addendum to his bankruptcy filing, the Debtor described difficulties in assembling information about his debts and liabilities, and he warned that there might be additions, deletions or corrections to his bankruptcy forms as new information arrived at his office or was discovered. Allred characterizes the note as an "announcement" that the Debtor's schedules were incomplete.

The second document was Celia's emergency motion for temporary restraining order in the divorce case. There, Celia generally complained that the Debtor had secreted his earnings and hidden assets from her. More specifically, Celia alleged that in the near future, the Debtor would be receiving a sizeable distribution from a partnership that had sold a property in Annapolis, Maryland, and that the Debtor held an interest in another partnership that was contemplating a sale of its principal asset. Alleging that the interests in the two ventures might "on information and belief, be the only substantial assets of the parties," Celia asked for entry of a temporary restraining order that would prevent a distribution of proceeds from the Annapolis property.

Regarding information provided by Celia or others, Allred argues that "whether or not these accusations were well founded, as a matter of law it cannot be deemed reasonable to ignore them." Brief in Support of Motion for Summary Judgment at 19. Allred observes that a trustee has the power to subpoena third parties, and that the Trustee or his counsel could have asked questions to verify whether there had been a sale to Allred or to other business associates of the Debtor with whom the Trustee had dealings while administering the estate. Allred further argues that the Trustee did not investigate or evaluate fraudulent conveyances, or look for undisclosed real estate holdings, based on the absence of time charges for such work in the fee applications of the Trustee or his counsel. He adds that even if there were no funds at the outset, the Trustee could have commenced an investigation once the estate had recovered funds of $18,800 in a September 1994 settlement.

In arguing that the Trustee failed to exercise due diligence in following up on leads, Allred relies on the fact that a trust-

ee has a statutory duty under Code § 704(a)[7] to investigate charges of concealment of assets, fraudulent conduct, and any other wrongdoing by the debtor or other third parties. *In re Chicago Art Glass, Inc.*, 155 B.R. 180, 188 (Bankr. N.D.Ill.1993). Allred notes language in the case law that a trustee's failure to perform his statutory duties nullifies the trustee's ability to invoke the doctrine of equitable tolling, just as failure to perform statutory duties expeditiously subjects the trustee to removal, forfeiture of fees, and liability for damages. *United Insurance Management, Inc.*, 14 F.3d at 1386.

Responding, the Trustee states that he has served as trustee in thousands of bankruptcy cases over more than 30 years, and developed a routine that he considers to be consistent with requirements set by the Code and by the United States Trustee for the Northern District of Illinois. Although the Trustee does not have specific recollection of all the tasks he performed in the Debtor's case, he believes that he followed the practice and routine that he has followed in other bankruptcy cases.

The Trustee attests that upon hearing that the Debtor had sold a valuable property, he asked for additional documents to substantiate that the transaction had taken place. The Trustee also presumes that he asked the Debtor about the Property and that he questioned him as to whom Larry Starkman was. After the meeting of creditors under Code § 341, the Trustee met with the Debtor on a number of occasions to discuss his assets, liabilities and financial affairs. The Debtor appeared cooperative at all times, and he provided substantial documentation in response to requests from the Trustee. The Trustee attests that the Debtor gave him no reason to believe that he had sold the Property to Allred or that the Debtor or Celia had an option to purchase the Property back from Allred.

The Trustee states that a bankruptcy trustee frequently receives calls telling him that a debtor is concealing assets. In the discussion in his brief, the Trustee observes that angry creditors often make accusations based on their suspicions or what they may have heard from others. Information from such sources is typically hearsay. Addressing Allred's contention that Celia's allegations of concealed assets should have put him on guard, the Trustee states that he reviewed pleadings from the divorce proceeding, but found nothing that

---

**7.** Code § 704(a) provides that a bankruptcy trustee has the following duties to—

(1) collect and reduce to money the property of the estate for which the trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that it improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of the receipts and disbursements, and such other information as the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee. 11 U.S.C. § 704.

specifically identified an asset that could be recovered by the bankruptcy estate. The Trustee would characterize Celia's allegations as boilerplate that is commonly found when there is hostility in a divorce proceeding.

The Trustee denies Allred's allegation that he and attorneys from his law firm did not investigate the possibility that the Debtor had made fraudulent transfers or concealed assets.[8] He points out that when the Debtor failed to produce federal income tax returns, he requested them of the Internal Revenue Service, only to learn that none had been filed. The Trustee also emphasizes that there is no evidence that Allred[9] or any other creditor approached him with information concerning the sale of the Property or an option. According to the Trustee, the nature of the alleged scheme was such that neither Allred, Celia or the Debtor would have disclosed it to him. The only way the scheme could have been discovered was through a confession, which came when Allred moved to reopen the bankruptcy case.

The Trustee takes the position that unless he has been provided with concrete evidence to the contrary, he may rely on information in a debtor's sworn bankruptcy schedules. He argues that under Code § 521, the Debtor had an absolute duty to disclose the option, which disclosure would have led the Trustee to the discovery that the Property had been sold.

▓▓▓▓▓ Looking to the evidence, Allred has not established as a matter of undisputed fact that the Trustee actually

knew of the existence of a possible cause of action to recover the Property. Allred contends that the tip provided by the United States Trustee at the outset of the bankruptcy case should be deemed actual notice of the possible cause of action, but there is no evidence that the Trustee had reason to believe that the reported sale price of one million dollars was inadequate. Drawing inferences in favor of the Trustee, the question raised in his mind might have been how the Debtor might have disposed of cash of one million dollars in the year preceding his bankruptcy. Resort to public records of real estate transactions would not have answered that inquiry.

Allred's other argument is that the Trustee had constructive notice of the potential cause of action. Constructive notice is such notice as will lead a prudent man to further inquiry. See, e.g., United States v. Smith (In re Hagendorfer), 803 F.2d 647, 649 (11th Cir.1986); State Bank of India v. Kaliana (In re Kaliana), 202 B.R. 600, 605 (Bankr.N.D.Ill.1996). Here, the disputed legal question is whether a bankruptcy trustee has a duty to investigate all matters that might put him on inquiry of potential causes of action against a debtor. As already noted, Allred suggests that a trustee should pursue all leads in the case, and that the duty to investigate may be even broader where there is reason to believe that schedules are incomplete.

The case law does not support the existence of such a broad obligation of investigation. In his capacity as fiduciary of the

---

**8.** The Trustee's affidavit contains a long list of many services performed in the Debtor's bankruptcy case. Many of activities described relate to those trustee duties under Code § 704(a) other than the investigation of a debtor's financial affairs.

**9.** Within a few months of the Debtor's bankruptcy filing, Allred's attorney contacted the Trustee with an offer to buy all the assets of the Debtor's estate. As the Trustee points out, if an option had been included among the estate's assets, a sale of all those assets to Allred arguably would have extinguished Allred's obligation to reconvey the Property.

estate's creditors, a bankruptcy trustee has duties to collect and conserve the assets of the estate, and to maximize the distribution to creditors in the case. *E.g., Lewis v. Cowan (In re Cowan)*, 235 B.R. 922, 924 (Bankr.W.D.Mo.1999); *In re Melenyzer*, 140 B.R. 143, 154 (Bankr. W.D.Tex.1992). Like any other fiduciary, a trustee must act with reasonable care and due diligence in discharging his statutory duties. *Id.* Since a trustee makes decisions without the benefit of hindsight, a trustee's administration of a case should be evaluated in light of the information available to him at the time. *E.g., Sloan v. Hoffman (In re Chavez)*, 157 B.R. 30, 33 (D.Colo.), *aff'd*, 13 F.3d 404 (10th Cir. 1993).

A trustee has the duty to collect known assets of the estate, including any fraudulent conveyances made known to him. *Melenyzer*, 140 B.R. at 155–56. However, he has no obligation to investigate every matter brought to his attention, no matter how frivolous. *Id.* at 155. Nor does a trustee have an obligation to reconstruct a debtor's financial affairs. *Scott*, 172 F.3d at 970 (also commenting that estate before it lacked sufficient funds to fund such a project). Rather, due diligence requires a trustee to conduct searches that are realistic in the ordinary course of the trustee's performance of his duties. *Pomaville*, 190 B.R. at 637. *Pomaville* and *Levy* explicitly conclude that a trustee's reliance on a debtor's sworn schedules and statements does not preclude invocation of the doctrine of equitable tolling. *Pomaville, id.; Levy*, 185 B.R. at 386.

Having reviewed the evidence, the Court concludes that the Trustee's inability to recall specific details of his administration of the case is not fatal to his equitable tolling argument. Drawing inferences in his favor, the Trustee may be able to establish that he conducted realistic searches for assets in the ordinary course of his duties as a trustee. Even though there may have been no concealment of the fact that the Property had been sold, Allred has not established that the Trustee actually knew of the sale or that he failed to exercise due diligence in investigating the Debtor's financial affairs. Accordingly, the Trustee may be able to establish that the statute of limitations under Code § 546(a) is subject to equitable tolling.

### Defenses Relating to Option Rights

██ Allred seeks judgment on a number of defenses to the Trustee's assertion of option rights. First, with respect to Option # 1, he submits his expert's opinion that his signature was forged on the Option Agreement. As the Trustee points out, Celia's expert reached a different conclusion in the State Court, and Allred alleged that Option # 1 was a valuable asset of the estate in his motion to reopen the bankruptcy case. There are material questions of fact bearing on the authenticity of Option # 1.

██ With respect to Option # 2, Allred notes that the Trustee has no written copy of such an option, and he argues that the Statute of Frauds would bar enforcement of an oral option agreement. Again invoking the Statute of Frauds, Allred contends that the Trustee cannot argue that Celia acts as his agent in asserting option rights because there is no written agency agreement to that effect.

Allred further renews his argument in the State Court that Celia lacks standing to enforce the Option Agreement, having assigned any such right to the Debtor. Allred argues, too, that both alleged options have expired by their terms, and that even if equitable tolling can be applied to extend the time for bringing the Trustee's fraudulent transfer counts, it cannot be used to extend the time for exercising any option.

As part of his response to the arguments on the questions relating to option rights, the Trustee takes the position that Allred is estopped from asserting defenses relating to the option. The Trustee's contention is that he relied on Allred's representations concerning the option when he made the decision to bring this adversary proceeding. Under Illinois law, one may be estopped from asserting rights if: (1) his or her words or conduct led another party to take some action it would not have taken but for the words or actions of the estopped party; (2) the party asserting estoppel actually and reasonably relied on the words and conduct, and that party did not know or have access to facts contrary to those on which it relied; (3) the reliance caused harm to the party asserting estoppel. *Kondik v. Ebner (In re Standard Foundry Products, Inc.),* 206 B.R. 475, 480 (Bankr.N.D.Ill.1997). Notably, to conclude that any element is established, a number of subsidiary findings of fact must be made.

Celia has also responded to Allred's motion for summary judgment. While she joins in Allred's arguments that the Trustee's fraudulent transfer counts are time-barred, she takes issue with Allred's arguments concerning the option, most particularly his contentions that his signature on the Option Agreement is a forgery, and that she lacks standing to enforce the Option Agreement. Celia adds that Allred should be estopped to deny the authenticity of the option in this Court.

The question whether Allred gave an option to repurchase the Property to either Celia or the Debtor will have to be litigated in this Court, as it impacts on whether the statute of limitations for bringing the fraudulent transfer counts may be equitable tolled. If there in fact was no option, all counts based on option rights will fail, and the Trustee's argu-

ments concerning concealment may be weakened. Allred's legal arguments resisting enforcement of an option have no bearing on that initial factual determination. Even if the alleged option was unenforceable, there still might have been a fraudulent scheme to remove the Property from the reach of the Debtor's creditors. Should the transfer be avoided, there will be no need to decide questions regarding the enforceability of the option, as the estate will have recovered the Property.

Although the alleged scheme in this case would have entailed a number of deceptive acts, and the presence of multiple parties with varying interests would seem to make it somewhat complex, the disputed facts in need of resolution turn largely on credibility. As such, the matter can be fairly easily resolved after trial. This Court is by now quite familiar with the factual issues involved.

In the interests of judicial economy, the Court will resolve the fraudulent transfer issues in this case without determining whether any option is enforceable. Because it has not yet been determined whether there is an option, the Court denies summary judgment on Allred's defenses to enforcement of the Trustee's alleged option rights.

## CONCLUSION

For the reasons set forth above, the Court denies Defendant Francis Ward Allred's motion for summary judgment. A status hearing in this proceeding will be held on September 18, 2001 at 10:30 a.m.